(44 South. 10.)

No. 16,391.

CENTRAL IMPROVEMENT & CONTRACTING CO. v. GRASSER CONTRACT-ING CO. et al.

(April 29, 1907. Rehearing Denied May 27, 1907.)

1. LIBEL AND SLANDER—WORDS TENDING TO INJURE BUSINESS.

The exception of no cause of action was erroneously sustained.

2. ACTION—TIME FOR BRINGING.

A suit should not be dismissed on an exception of prematurity, when the cause of action on which it is brought exists at the time it is instituted.

3. SAME.

The question as to the particular time at which a suit should be tried is essentially different from that as to when the plaintiff has the right to institute it. Defendant might have the right to have the case continued to await some decision in another case, and yet not be entitled to throw plaintiff's suit out of court.

4. SAME—LIMITATIONS—WORDS INJURIOUS TO BUSINESS.

This suit is one "ex delicto." If plaintiff were to delay filing it until the condition of the evidence be such as to warrant his immediately trying it, he might be cut off from all opportunity of doing so by a plea of prescription of one year.

5. ABATEMENT AND REVIVAL — ANOTHER ACTION PENDING—IDENTITY OF CAUSES OF ACTION.

Though the result of a suit in one court may enter as a factor in the determination of another in a different tribunal, "lis pendens" cannot be properly pleaded on the ground of the coexistence of the suits, where the causes of action are not identical.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by the Central Improvement & Contracting Company against the Grasser Contracting Company and another. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Lazarus, Michel & Lazarus and David Sessler, for appellant. McCloskey & Benedict, for appellees.

NICHOLLS, J. Plaintiff alleged: That the defendants are indebted to it in the sum of $25,000, with legal interest thereon from the date of the judgment asked in its behalf, for this, to wit: Petitioner was organized and incorporated by an act passed before Herman Michel, Esq., notary public, on the 14th day of March, 1905, with an authorized capital of $100,000; that the objects and purposes of said corporation, as recited and set forth in its charter, are declared to be:

" 'To contract, purchase, sell, or in any manner to trade in public or private improvements of any nature and kind whatsoever; to engage in the business of constructing buildings of every kind for its own account or for private individuals or private or public corporations; to engage in a general paving business either for new works or repair; and, in the pursuance of the objects herein named, to own or lease and operate all plants as may be necessary or useful in the carrying out of the aims and objects for which this corporation is organized. All of which will more fully and at large appear by reference to a certified copy of the charter to be produced upon the trial of this cause.'

"That of the authorized capital of said corporation upwards of $80,000 was subscribed for under the conditions recited in the charter, and the said corporation, through its officers, solicited subscriptions for the remaining unsubscribed and unissued stock, aggregating approximately $20,000.

"That, while it was competent under its charter for it to engage in the character of work therein provided, it had, through its directors, determined to devote its attention particularly and specially to the paving of streets and public or private highways and specially, and as the most important part of the character of the work which plaintiff would undertake, to devote its particular attention to curbing and guttering under approved methods, by the use of cement and concrete, strengthened and supported by galvanized metal as a protector and held in place by the application of an anchor and key, which was a new and modern device to insure durability and permanency of the work which petitioner should undertake.

"That being advised of a recently patented invention of Gustav Soniat Dufossat, which would insure the result of durability and permanency in the construction of gutter curbing, and having had examined the patent so obtained by said Dufossat by those skilled in the art, and being advised, independent of the letters patent issued by the United States government, that the invention of said Dufossat was novel and meritorious, and that it was free from any charge of infringement upon the patents theretofore granted by the United States government, petitioner purchased from said Gustav Soniat Dufossat all of his right, title, and interest in and to his invention and patent rights accorded him under letters patent No. 775,623, and paid a large and valuable price therefor, and the said Gustav Soniat Dufossat did sell, transfer, and assign to petitioner all of his right, title, and interest in and to said patent, and in furtherance thereof made due assignment to petitioner thereof.

"That immediately becoming possessed of said patent and the right thereunder, and by virtue of the assignment thereof to use the same, it solicited business of the various paving contractors in the city of New Orleans to consider their bids, with a view to entering into contracts with petitioner for the curbing and guttering under their general contracts for paving, offering to said contractors to furnish a curb as good as any then in the market and which had been in use by them, with the advantage resulting from the use of the key and anchor specially covered by petitioner's patent insuring durability and permanency to the work, and to do said work and at a price less than 33 per cent. than that paid by said contractors and the property holders of this city, who are charged with the cost of said curbing and guttering. That petitioner at all times stood ready and willing, and so advised said contractors, to guaranty in all respects the perfect performance and execution of the work that should be intrusted to it.

"That at the time petitioners solicited the contractors aforesaid to give consideration to their bids for the curbing and guttering of paving contracts, which were then in contemplation, and these contracts which had been awarded by the city of New Orleans under competitive bidding to said contractors, there was a large amount of paving to be done in this city, and the curbing and guttering in connection therewith, in amount, exceeded the sum of $50,000. That all bids submitted by the contractors aforesaid for the paving of public streets were based upon the cost thereof, and that the cost of curbing and guttering which the property holders were called upon to pay under the contracts awarded ranged from $1.10 to $1.25 per running foot, and that petitioner through its officers offered to do the work as skillfully and effectually and with advantage of the patents which it held and owned tendering good and sufficient security for the faithful performance of said work for the sum of 90 cents per running foot, a saving to the property holder and taxpayer and to the city of at least 33 per cent. of the cost thereof.

"That the Grasser Contracting Company, through its officers acting in their representative capacity, and while soliciting and conducting business in its behalf and for its profit and advantage, and Joseph E. Manning, in his official capacity as the representative of said Grasser Contracting Company, and individually in the advancement of his own interest, acting in concert with the other officers of the Grasser Contracting Company for the purpose of promoting and advancing their respective business interests, and while in competition with petitioner, and with a view to injuring and destroying the business of petitioner, and of preventing petitioner from having even an opportunity of being an active and legitimate competitor with them in the curbing and guttering of the public streets of New Orleans, under contracts awarded and to be awarded by the city to the various contractors herein referred to, the said Grasser Contracting Company, through its officers, and said Joseph E. Manning, acting in concert with them, maliciously spoke, published, and circulated false, defamatory, and libelous statements in relation to petitioner and its business as

a contractor, and the denial of the right upon the part of petitioner in the use of its patents for the purpose of guttering and curbing as hereinbefore and hereinafter recited, and petitioner's inability to carry on and conduct the said business in a manner satisfactory to those who should contract with it; that petitioner could not, under its patents, which were assailed by defendants, have the advantage in the use of the improved methods covered and protected by its patents for curbing and guttering, insuring its permanency and durability—all of which publications, utterances, and libelous statements were to the injury, wrong, and prejudice of petitioner.

"That the Grasser Contracting Company assert and claim that they are the licensees, with the exclusive right to the use in the city of New Orleans, of certain devices and methods which they pretend are protected by what is known as the Wainwright patents, and that the patent acquired by petition from Gustav Soniat Dufossat is an infringement upon the said Wainwright patents, and the said Manning and others, representing the Grasser Contracting Company, put in circulation the report that petitioner's patent is an infringement of the patent of Wainwright, its licensor, and that petitioner's patent is piratical, and that any contractor undertaking to use the device of petitioner would be enjoined in the execution of their contracts, and would be held responsible in damages for the infringement of the Wainwright patent, and that by the repeated statements and threats of the said Manning and the Grasser Contracting Company the various contractors of this city, some of whom had been awarded contracts for paving and curbing and guttering the public streets, were intimidated, and, notwithstanding the proffer by petitioner to give bond that the work should be carried on to execution as contracted for, the apprehension was felt by the said contractors that the work would be delayed by threatened proceedings in injunction by said Manning on his own behalf of the Grasser Contracting Company, and petitioner was thereby denied the advantages to which it was legally and legitimately entitled in competitive bidding for work which it had the right to perform and which was protected by its letters patent, and in consequence thereof petitioner has been damaged in the full sum of $10,000, the profits which petitioner would have earned upon the basis of the volume of business which would have been accorded to it in consequence of the price which it expressed a willingness to perform the work at, being at least 33 per cent. below that demanded by the Grasser Contracting Company for the construction of curbing and guttering under their license to use the pretended Wainwright patents.

"That its patent as to the items claimed therein are exclusive, and that Wainwright has no valid patent to the exclusive use of steel and concrete for curbing, and that an intervention was filed by the said Wainwright pending the application of petitioner's assignor for a patent, and said intervention, as appears by the records, was denied, and said Wainwright and his licensees knew full well that the patent of petitioner in no manner infringed upon the pretended patents of Wainwright, and the circulation of that report was libelous, slanderous, and falsely done, maliciously and with a view to injure petitioner and keep it from the field of legitimate competition for works of public improvement.

"That the circulation of these false and slanderous reports by the said Manning and the Grasser Contracting Company has deterred a large number of people from subscribing for and taking the unsubscribed portion of the stock of said corporation, inasmuch as they were advised by the circulation of the reports aforesaid by the persons aforesaid, and through the channels aforesaid, that petitioner's patent is an infringement of what is known as the Wainwright patents, and that the attempt upon the part of petitioner to use the same would subject it to legal proceedings, the effect of which would be to destroy the property of petitioner. That, with a view to entering into contracts for the purpose aforesaid, it had ordered large quantities of steel rails, and had provided for large quantities of anchors and keys molded expressly for petitioner's use, so as to enable petitioner to promptly and effectually execute such contracts as might have been awarded to it or which it might have secured in the course of its business.

"That the acts of the Grasser Contracting Company and of Manning, as aforesaid, have subjected petitioner to great loss consequent upon its failure to secure contracts and subscriptions aforesaid, and has crippled the business operation of petitioner, entailing a loss upon it of at least the sum of $10,000.

"That all of the acts and doings hereinbefore recited and complained of as against the Grasser Contracting Company and Manning have been largely clandestine and through influences which petitioner could not combat or control. That petitioner was instrumental in securing, upon its application to the common council of the city of New Orleans, an ordinance providing for the subdivision of paving contracts so as to secure individual bids upon the guttering and curbing and subsurface drainage. That, notwithstanding the recent passage of the ordinance which would enable petitioner to compete legitimately with the said Grasser Contracting Company, the licensees of the pretended Wainwright patents, for the character of the work hereinbefore described, the said Grasser Contracting Company and the said Manning continue to libel and slander and to put into circulation false reports with reference to petitioner's patent, and to threaten directly and by innuendo all contractors who contemplate the consideration and all possible awarding to petitioner of contracts for paving and guttering with injunction suits and suits in damages, in the event that they undertake to have the guttering and paving done under the patent owned

by petitioner, and by petitioner's company. That in order to protect petitioner's rights it was necessary for it to employ counsel, the action of the said Grasser Contracting Company and Manning being malicious, to assert in these proceedings their right to recover the damages inflicted by the acts hereinbefore recited, and that a reasonable compensation for the services of counsel in the prosecution of this suit, and as an element of damages which plaintiff is entitled to recover in the assertion and maintenance of its rights, is herein fixed at the sum of $5,000.

"In view of the premises, petitioner prayed that the Grasser Contracting Company, through its proper officer and Joseph E. Manning, individually, be cited to appear and to answer hereto, that, after due and legal proceedings had, there be judgment in favor of petitioner and against the said Grasser Contracting Company and Joseph E. Manning, individually, both defendants being condemned in solido, for the sum of $25,000, with interest thereon from rendition of judgment and for costs of these proceedings, and petitioner prays for trial by jury and for all general and equitable relief."

Defendants excepted to plaintiff's petition, on the grounds that: First, the same is too vague, general, and indefinite to enable this respondent to safely answer thereto; second, that said petition disclosed no cause of action against the defendant.

In view of the premises, exceptors prayed that these exceptions may be maintained and plaintiff's suit dismissed, with costs, and for general relief.

They subsequently filed further exceptions of lis pendens and prematurity, alleging that, inasmuch as there was then pending in the United States Circuit Court for the Eastern District of Louisiana, under the No. 13,374, a bill in equity in the cause entitled "Steel Protecting Concrete Company and the Grasser Contracting Company v. The Central Improvement & Contracting Company," that the determination of the issues therein involved could be the only predicate of the institution of the present suit, and, while the suit in equity remains undetermined, the action presently instituted is premature and without foundation in law. In view of the premises, they prayed that the exceptions herein filed, to wit, prematurity, lis pendens, vagueness,

and of no cause of action, may be sustained, and plaintiff's suit dismissed, at its costs, and for general relief.

The district court rendered judgment as follows:

"The defendants' exceptions that plaintiffs' suit is premature, and that plaintiffs are without rights or cause of action to sue for the causes alleged, until the federal court, having exclusive jurisdiction, shall have first settled the issues between them and defendants in regard to their respective patents, and whether the case of the one patent is an infringement upon rights confirmed by the other patents, are sustained, and plaintiffs' suit is dismissed at plaintiffs' costs, without prejudice to any rights of actions plaintiffs may have in the premises, after said final determination of said issues in the federal court. Written reasons will be filed."

The plaintiff appealed.

The court erred in sustaining the exceptions of no cause of action. If plaintiff's allegations be true, and they must be taken to be so for the purposes of that exception, he will undoubtedly be entitled to a judgment for damages to some extent. Plaintiff's allegations are very similar to those of plaintiffs in the suit of Snow & Busch v. Judson, reported in 38 Barb. (N. Y.) 210, in which they brought suit against defendant for damages for malicious and false representations as to themselves and their business, just as plaintiff does here. In that case an exception of no cause of action was rejected as not well founded. If defendant's conduct which gave rise to the present action originated prior to the bringing of this suit, plaintiff was entitled to bring the suit at the time he did. If so, it was not prematurely brought. The question as to the particular time at which plaintiff should try his case, so as to have at hand the evidence necessary to enable him to recover judgment on his demand, is one essentially different from the question as to the particular time when he could legally file his petition and cite the defendant. The action which plaintiff was entitled to bring against defendants (if his allegations were

true) was one ex delicto, which, if not promptly brought, would be barred by the prescription of one year. If a plaintiff were to delay bringing his action until he could obtain the testimony needed by him to establish his claim, he might find himself, when prepared to do so, cut off from all opportunity to establish it by the statute of limitations of one year. It was his duty to file his action, whether he had the necessary testimony or not, staying proceedings or holding them up in abeyance or continuing them after such filing until matters could be brought into such a shape as to justify him in bringing the case to trial. It would not be to his interest to force a trial until the situation as to testimony should be such as to warrant his doing so. The situation might entitle the defendant himself to have the case stayed and made to wait upon some action to be taken in the future, upon which his defense might rest; but he could not ask a court to throw plaintiff's suit out of court. Defendant has cited no instance where a suit has been dismissed based upon an exception of prematurity, when the plaintiff's cause of action was in existence at the time of the institution of the suit.

In the Snow Case, the court said:

"The only course of action alleged was the false assertion and the resulting injury, and the demurrer; the using of the words, their falsity, and the alleged injury. The plaintiffs could not maintain the action in the United States courts, as all parties resided in the state, and they would be remediless, unless they could prosecute their case in the state courts."

The exception of lis pendens should have been overruled. We do not understand the cause of action upon which the suit in the United States court has been brought to be the same as, or identical with, that now before this court, though the decision of the fact at issue in the United States court might enter as evidence as to a fact alleged in the present case and to be considered by us in the final determination of plaintiff's demand. Besides, we understand this suit was brought

first. We do not think the decision in the Snow Case is weakened in the least by that of Hovey v. Rubber Tipped Pencil Co., 57 N. Y. 125, 15 Am. Rep. 470, referred to by defendant. That case was disposed of, not upon an exception, but after a trial on the merits and plaintiff's main demand for a present injunction against the defendant. The plaintiff in this suit does not ask for any such relief. Defendant refers to Burt & Co. v. Casey & Hedges Manufacturing Company, 107 La. 231, 31 South. 667. That case was not tried upon an exception, but upon the merits, and it was passed on under the evidence as adduced on the trial.

Defendant in the last brief filed in its behalf denies that question of jurisdiction is before us. Counsel say: No exception to the jurisdiction has been filed.

We are of the opinion that the judgment of the district court sustaining the exception of no cause of action and prematurity is erroneous, and it is therefore annulled, avoided, and reversed. The case is reinstated in the district court and remanded to that court for further proceedings according to law.