165 So. 632

McCOY et al. v. ARKANSAS NATURAL GAS
CO. et al.

No. 33342.

Jan. 6, 1936.

Rehearing Denied Feb. 3, 1936.

Dawkins & Lassiter, of Monroe, G. P. Bullis, of Vidalia, and Anders & Anders, of Winnsboro, for appellants.

J. B. Thornhill, of Monroe, and Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

FOURNET, Justice.

This is a suit by landowners against a lessee of certain other neighboring lands, within a radius of one mile from their property, to recover damages said to have been sustained as a result of the defendant's negligent and deliberate acts in permitting valuable gas deposits under plaintiffs' lands to escape through a well and crater located on the lands which defendant leased and cratered by its negligent and willful acts.

The parties plaintiffs and defendant in this case are the same, with the exception of J. Hemp Brown and Martin E. Hemler (whose claims it is conceded by their counsel are barred by prescription), as those in the case of J. A. McCoy et al. v. Arkansas Natural Gas Co., 175 La. 487, 143 So. 383, 85 A.L.R. 1147. In that case we affirmed the judgment of the lower court sustaining exceptions of no cause and no right of action filed by the defendant. Within one year from the date the judgment became final, plaintiffs filed the present suit, making substantially the same allegations of fact as they did in the first suit, with the exception that the negligence complained of was alleged to be willful and intentional on the part of defendant and re-urged their claim of $400,000 for damages to the structure of their lands and for loss of gas, etc., but reduced the amount of their claim therefor to $393,187.50. They made the additional allegation that the market values of their lands and of the servitudes, which formed component parts thereof, were damaged to the extent of $300 per acre (2,019 acres), or a total of $605,-700, which they pleaded in the alternative they were entitled to recover in the event that their main demand be rejected.

The defendant again filed exceptions of no cause and no right of action to plaintiff's petition, and later entered pleas of prescription and res adjudicata. The trial judge maintained these exceptions and pleas, and the plaintiffs have appealed.

Exceptions of no cause and no right of action must be decided on the face of plaintiffs' petition, and every well-pleaded fact therein contained must, for the purpose of the exceptions, be taken as true, and must be overruled if the plaintiff is entitled to some relief under the allegations of his petition. Thompson v. General Accident Fire & Life Assur. Corporation, 155 La. 31, 98 So. 746; Davis v. Arkansas Southern R. Co., 117 La. 320, 41 So. 587; Doullut v. McManus, 37 La.Ann. 800; Hillard v. Taylor, 114 La. 883, 884, 38 So. 594; Central Improvement & Contracting Co. v. Grasser Co., 119 La. 263, 264, 44 So. 10.

"Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it." Article 2315, Rev.Civ.Code.

In the instant case the plaintiffs' petition contains allegations of willful and intentional fault and gross negligence on the part of defendant, specifically charging that the defendant willfully and intentionally used secondhand casing which had deteriorated from use and age, and which defendant knew was not of sufficient strength to withstand the tremendous pressure which it knew existed in the Richland gas field, and, with full knowledge of that fact, deliberately used the defective casing without having it tested as required by the laws of this state; that immediately after the well was completed gas began to escape from the ground about the casing, clearly indicating that something was radically wrong, and that there was great danger of the well going out of control unless immediate steps were taken to prevent it, but that, in spite of, and with full knowledge of, these unmistakable warnings of impending danger, the defendant willfully and intentionally failed to take any action to prevent the explosion which occurred on February 1st, 1928, and caused the gas to flow with full force and uncontrolled into the air; that defendant willfully and intentionally employed drillers whom it knew to be grossly incompetent and inexperienced in handling drilling operations in the Richland field, and that the agents and employees in charge of the drilling of this well were drunk when said well went out of control; that the defendant was repeatedly requested by plaintiffs, and ordered by the conservation commission of Louisiana, to stop the uncontrolled flow of gas from this crater, but failed and refused to do so, notwithstanding the fact that by the use of proper methods and competent men the well could have been easily controlled within thirty days, and that defendant willfully and intentionally and adamantly refused to employ competent help, and permitted the uncontrolled flow of gas to continue until March, 1931, when, under compulsion by the conservation commission of Louisiana, proper methods were started, and the well was finally brought under control on April 10, 1931. Plaintiffs prayed for damages for the loss of gas from under their lands, and, in the alternative, for damages to the value of their lands and servitudes.

Our attention has been called by counsel for defendant to the fact that under the jurisprudence of this state it is well settled that the right to explore one's lands for oil or gas is a real right, and the unlawful trespass on such lands for the purpose of extracting gas or oil therefrom gives rise to an action for damages, measured by the gas or oil captured or reduced to possession. But the drilling on lands of others, and thereby taking or causing gas to escape from one's property or gas field does not give rise to an action for damages, although, if such gas is not reduced to possession or use and merely allowed to wastefully escape, such action may be the subject of injunctive relief.

A review of the cases on that subject-matter shows that damages were not allowed because of the uncertain and speculative nature of the loss complained of. One of the reasons which we assigned in this case when it was previously before us for sustaining the exceptions of no cause and no

right of action was that "the loss complained of was, manifestly, more a matter of uncertainty and speculation than of fact or estimate." And we said further in the course of our opinion, 175 La. 487, at page 498, 143 So. 383, 386, 85 A.L.R. 1147, that:

"It is conceivable * * * that a case might be presented where a landowner would be entitled to damages for loss or impairment of his oil or gas rights by some fault of a neighbor on his own land. But * * * the loss sustained by the complaining neighbor would have to be measurable, approximately, if not exactly, in money. *An illustration of a case where such damages could be estimated would be one where the market value of the plaintiff's land or mineral rights is impaired by the fault of his neighbor.* " (Italics ours.)

■ Plaintiffs' main demand in the case at bar being substantially the same as that in the previous case, we must therefore, in so far as it is concerned, maintain the exception of no cause of action.

■ But in their alternative plea plaintiffs did allege as a fact that the market values of their lands and servitudes or mineral rights had been impaired as a result of defendant's alleged acts to the extent of $300 per acre, and we are therefore of the opinion that such allegations are sufficient to set forth a cause of action, and plaintiffs should be given their day in court to prove the same, if they can.

Counsel for defendant contend that, if we find that the plaintiffs' petition discloses a cause or right of action, then, inasmuch as the thing demanded is the same in both

suits and between the same parties and in the same quality, therefore the judgment in the former suit is res adjudicata in this suit. And, if this be not true, the plea of prescription of one year must be sustained, because, if neither the demand nor the cause of action is the same, the filing of the first suit would not have the effect of interrupting the prescription of one year under article 3536 of the Revised Civil Code, and they cited the case of De Bouchel v. Koss Construction Co. 177 La. 841, 149 So. 496.

■■ It is the settled jurisprudence of this state that "a judgment, sustaining an exception of no cause of action on the technical ground that the plaintiff omitted a necessary allegation, is, in effect, a judgment of nonsuit, and does not prevent the plaintiff's renewing his demand on sufficient allegations." Laenger v. Laenger, 138 La. 532, 70 So. 501, cited with approval in Woodruff v. Producers' Oil Co., 142 La. 368, 76 So. 803. See, also, Succession of Herber, 119 La. 1064, 44 So. 888; Carolina Cement Co. v. Southern Wood D. & F. Co., 137 La. 469, 68 So. 831.

Necessarily this disposes of the plea of res adjudicata urged in this case, and we shall now consider the plea of prescription.

Plaintiffs alleged that the well drilled by defendant on the Thompson property crattered on February 1, 1928, and that it was finally closed on April 10, 1931. Suit was first filed on April 23, 1931, and the judgment on the exceptions of no cause and no right of action became final on the 20th of July, 1932, being the date on which the rehearing was denied by this court on ap-

plication filed by the plaintiffs. The present suit was filed on July 19, 1933.

Plaintiffs alleged that the injuries and negligence complained of were constant and uninterrupted, and contend that such constitutes a continuing tort, and consequently prescription did not begin to run until the day the well was closed, when the negligence and damages complained of ceased, citing in support thereof the case of Werges v. St. Louis, C. & N. O. R. Co., 35 La. Ann. 641. See, also, Di Carlo v. Laundry & Dry Cleaning Service, 178 La. 676, 152 So. 327.

■ For the purpose of disposing of the plea of prescription, we must accept as true the *allegations* of the continuous nature of the injury and the cause that gave rise thereto as set forth in the petition.

■ In the case of National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 104, 105 So. 234, 241, we said:

"It is not every judicial demand which will interrupt prescription, but is such demand, even though imperfectly stated, as will fairly apprise the defendant of what is demanded of him."

On that subject-matter this court has drawn a distinction between the class of cases in which the plaintiff voluntarily dismisses his suit and the type in which he is forced to discontinue the suit by judgment of court. In the latter situation, the court has consistently held that the initial proceedings are sufficient to interrupt prescription. Flower v. O'Connor, 17 La. 213; see, also, Anding v. Texas & P. R. Co. et al.,

158 La. 412, 104 So. 190, and cases therein cited; B. J. Wolf & Sons v. New Orleans Tailor-Made Pants Co., 110 La. 427, 34 So. 590, and cases cited therein.

■ We are therefore of the opinion that the petition filed by plaintiffs on April 23, 1931, though the cause of action was imperfectly stated, was sufficient to apprise the defendant of the nature of the demand and was notice to it that the plaintiffs intended to assert the same and therefore was sufficient to interrupt prescription.

Plaintiffs had one year from the date of the final disposition of the first suit, July 20, 1932, within which to file this suit, and, since plaintiffs filed it on July 19, 1933, it was brought within the time prescribed by the provisions of Act No. 39 of 1932, § 1, which provides:

"That the filing of a suit in a court of competent jurisdiction shall interrupt all prescriptions affecting the cause of action therein sued upon, against all defendants, including minors and interdicts."

For the reasons assigned, the judgment of the lower court, maintaining the exceptions of no cause and no right of action, the pleas of res adjudicata and of prescription of one year, is annulled and set aside. It is further ordered, adjudged, and decreed that the case be remanded to the lower court to be proceeded with according to law and consistent with the views herein expressed; costs of this court to be paid by the defendant and appellee, all other costs to await the final outcome of this suit.