CHEHARDY, Judge.
Plaintiff, Security Insurance Company of Hartford (Security), appeals a district court judgment in favor of Glenn D. Rogers, garnishee in a prior suit entitled “Security Insurance Company of Hartford v. Russell Holliday, Sr.,” No. 171-354 on the docket of the Twenty-fourth Judicial District Court in and for the Parish of Jefferson, State of Louisiana, annulling and vacating that judgment issued against him on March 25, 1977. The judgment in the present case also ordered Rogers to pay $750 attorney -fees to Security and all costs of the garnishment proceedings as against himself.Z
*850 This case arose from an embezzlement by Russell Holliday, Sr., of his employer, Le Pavilion Hotel. After it paid its assured, Le Pavilion, Security obtained judgment against Holliday in the sum of $11,000. At the request of Security a writ of fieri facias directed against Holliday was issued, and Rogers did not respond to garnishment interrogatories, nor did he make an appearance, and he was ultimately cast in judgment for $13,634.65, representing the amount owed under the garnishment, plus interest, costs and attorney fees. Although Rogers appealed that judgment, it was affirmed by this court and the Louisiana Supreme Court denied writs. Thereafter, Rogers filed the present action for nullity.
At a trial on the merits of the case Janice Bertucci testified that she was the daughter of Jack Craft, owner of Craft Motor Company, and that she was working at that establishment during the years of 1976 and 1977. She stated that Holliday worked for the company from the end of November, 1976 through April of 1977 and this was verified by records she kept and maintained for Craft’s sales tax returns and office correspondence signed by Holliday.
Mrs. Bertucci also produced checks covering the above employment period, which were made out to Holliday, and she said she dispensed information regarding his employment status at Craft to a number of callers. She also said that no deductions were taken from the salary paid to Holliday by Craft.
Jack Craft also testified that his company employed Holliday from the end of November, 1976 through April of 1977. He stated Holliday did light accounting work, handled correspondence, tax forms, performed sales and that he was employed as “contract labor.” He also said he did not conceal the fact that Holliday was employed by him and he added Holliday was previously employed by Rogers as the company’s certified public accountant.
Mrs. Glenn Rogers testified she worked for her husband who was in the accounting business in 1976 and 1977 and that Holliday left his employment in November of 1976. She said before Christmas of that year she answered a number of calls telling the callers that Holliday no longer worked there.
Rogers said at trial that Holliday worked for him on a work release program after he left prison. He stated Holliday worked for him on a subcontract basis so he would not withhold any taxes from his pay.
Rogers stated the first occasion he knew there was a judgment against him was in April of 1978. He said after Holliday left his employ he still had contact with him because he (Rogers) was also performing services for Craft Motor Company and Hol-liday used Rogers’ facilities to do his own work for Craft.
Holliday also testified he worked for Rogers until the 29th or 30th of November of 1976, at which time he began working for Craft. He stated he worked for Craft until April of 1977 and during that employment period he worked at Rogers’ office intermittently. He said also that in January of 1977 while he was on Rogers’ premises he was served with some papers from Security, saw that they pertained to himself, so he put them in his pocket and took them home. He stated he saw no reason to tell Rogers about the papers because they pertained to him, Holliday.
Holliday further said that in April of 1978 Rogers contacted him and asked him to come over and speak to him in reference to the matter of Security versus Holliday. Rogers also informed Holliday that a judgment had been entered against himself which Holliday said surprised him. He said he told Rogers at that time about being served with the papers in January.
Holliday said he had previously been in a penal institution because he had embezzled $17,000 from Le Pavilion Hotel and stated he did not work for Rogers after November of 1976.
In regard to the fact of concealment of the papers which Holliday had received for Rogers, the court noted that it was “extremely concerned.” Holliday, however, said that he would not characterize his actions as a form of concealment because the *851 top paper was addressed to himself. He said he did not read the “long paper” until later on.
In his petition for nullity of the judgment of garnishment, Rogers avers, among other things, that he at no time received actual notice of the garnishment proceedings nor was he at any time legally cited therein and that, therefore, this honorable court was without jurisdiction ratione personae to render judgment herein. In a judgment rendered on July 9, 1979 the district court granted Security its exception of no cause of action to the nullity petition filed by Rogers. The judgment further ordered that Rogers amend his petition for nullity on or before July 9, 1979 or suffer dismissal of same with prejudice at his costs. On July 9, 1979, the petitioner did amend said petition alleging therein that the judgment against him was obtained through ill practices, fraud and/or misrepresentation which became known to him since April 25, 1978 in that the record showed the same law firm represented plaintiff and defendant in the original action, the judgment against the original defendant was rendered at a pretrial conference where both parties were represented by the same law firm; the original plaintiff and/or their representative knew that the original defendant was not employed by the plaintiff in January 1977 but was in fact employed by Craft; and that on March 25, 1977 both plaintiff and/or their representative was aware that the original defendant was not in the employment of the plaintiff in the present case.
In his reasons for judgment in the present case the trial court judge said:
“This cause arises out of garnishment interrogatories filed and served at the office of Glenn Rogers, garnishee herein on January 16, 1977. The evidence clearly shows Glenn Rogers was not served but the original defendant Russell Holli-day was served. Mr. Holliday admitted he took the garnishment interrogatories and secreted them from Glenn Rogers.
“The evidence shows that at the time the garnishment interrogatories were served at Glenn Rogers’ office to Mr. Holliday, that Mr. Holliday, the original debtor was not employed by Glenn Rogers, but was in fact an employee of Craft Motor Company.
“This situation is complicated by the fact that Glenn Rogers is a C.P.A. who had hired Holliday on a work release program from Louisiana Department of Corrections. In late November, 1976 Holli-day left Rogers employ and went to work for Craft Motor Company, a client of Rogers’ C.P.A. firm.
“The Craft Motor Company people clearly verified this to be true. The happenstance of Holliday being in Rogers’ office when service of the garnishee interrogatories was made was occasioned by the fact that Rogers was allowing Holliday to use his (Rogers) office equipment, hoping to get Holliday off to a new start after his embezzlement conviction (the basis for the original judgment in this case).
“Suffice it to say, the Court is clearly convinced that the judgment debtor Hol-liday was not in the employ of garnishee Rogers at the time the garnishment interrogatories were served.
“The Judgment creditor, Security Insurance Company of Hartford, filed on February 10, 1977 for a pro confesso judgment which was served on Rogers at his domicile. Judgment was rendered thereon March 25, 1977, which was noticed to Rogers in April, 1978 over one year later. A new trial motion filed by Rogers was denied and there was an appeal therefrom, which affirmed the Court’s decision.
“A petition for nullity was filed on Rogers’ behalf attesting [sic] the judgment pro confesso rendered March 25, 1977.
“The evidence as discussed herein above shows that the garnishee Rogers was not served and the Judgment should be annulled.
“The 1st Circuit Court of Appeals ruled in a situation remarkably similar to this case in Mid-City Investment Co., Inc. vs. *852 Baptist, 248 So.2d 88 1st C.C.A. 1971 that since the garnishee was not in fact indebted to the Judgment debtor at the time of service, that the garnishee’s failure to answer timely etc., makes the garnishee liable for all costs and reasonable attorney’s fees.”
The attorney for Security testified at trial that he has never represented Holliday and his name listed on one of the judgments in the case as representing him was a typographical error. He said although he saw the judgment after it was prepared he did not catch the error. He said the judgment, in fact, should have read that he was attorney for the plaintiff, thereby dispensing with Rogers’ allegations of misrepresentation and ill practice on that basis.
Security also argues that the action for nullity had prescribed due to the fact that the petitioner’s amended petition was filed more than one year after discovery of the ill practices or fraud alleged to have occurred and the first petition (filed within the one-year limit) was dismissed on the exception of no cause of action.
LSA-C.C.P. art. 2004 provides that a final judgment obtained by fraud or ill practices may be annulled. It also states, however, that an action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
The case of Towne v. Towne, 364 So.2d 627 (La.App. 2d Cir. 1978), also held that where a plaintiff had been aware of fraud or ill practices, he had no more than one year from that awareness to file his suit for nullity.
In the case of Phoenix of Hartford Ins. Co. v. United States Rub. Co., 245 So.2d 436 (La.App. 1st Cir. 1970), the court also said at 439:
“Assuming, arguendo, that the original petition failed to state a cause of action, we are satisfied, nevertheless, that the filing of the original petition within the one-year prescriptive period sufficed to interrupt prescription so that if plaintiff first stated a cause of action upon the filing of its first “Supplemental and Amended Petition,” the sustaining by the trial court of the peremptory exception of prescription was erroneous.
“The applicable law in this regard is well summarized by the Lousiana Supreme Court in Callender v. Marks, 185 La. 948, 171 So. 86, 87, 88 (1936), as follows:
‘The jurisprudence is well established that where a petition imperfectly states a cause of action due to insufficiency of allegations, but informs the defendant of the nature of the claim or demand, an amended petition supplying the deficiency may be filed even after an exception of vagueness or an exception of no right or cause of action has been sustained, and after the prescriptive period has elapsed, because the amendment does not set up a new, different or separate cause of action, but merely clarifies and amplifies the allegations of the original petition or demand which interrupted prescription. Reeves v. Globe Indemnity Co. of New York, 185 La. 42, 168 So. 488; McCoy v. Arkansas Natural Gas Co. et al., 184 La. 101, 165 So. 632; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234-240; James v. City of New Orleans, 151 La. 480, 91 So. 846-848; Missouri, etc., R. R. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355, Ann.Cas. 1914B, 134.
‘Where an exception of no right or cause of action is sustained because the petition does not state any right or cause of action whatsoever, prescription is not interrupted by the filing thereof, and the amended petition or the subsequent suit, which does set forth a cause of action or another demand based on different grounds than those contained in the original petition, does not date back to the filing of the original petition, and, if filed after the prescriptive period has elapsed, will be dismissed upon a plea of prescription. National Park Bank v. Concordia Land & Timber Co., supra; De Bouchel v. Koss Const. Co., Inc., et al., 177 La. 841, 149 So. 496; Union Pacific R. Co. v. *853 Wyler, 158 U.S. 285, 15 S.Ct. 877, 39 L.Ed. 983; Sicard v. Davis, 31 U.S. (6 Pet.) 124, 8 L.Ed. 342.’ ”
In the present case Rogers testified that he did not learn of the act of Holliday (in secreting the petition served at Rogers’ office) until after April of 1978 when the judgment was served upon him, and this was confirmed by the testimony of Holli-day. Although the amending petition was filed on July 9, 1979, the judgment rendered on that date granting the exception of no cause of action (in regard to the original petition) simply ordered Rogers to amend his petition or suffer dismissal of same. We hold, therefore, that under Phoenix of Hartford Ins. Co. v. United States Rub. Co., supra, Security was informed of the notice of the claim or demand by the original petition filed by Rogers on March 16, 1979 which interrupted the prescriptive period that had begun to run on April 25, 1978, as alleged in the amending petition.
Security also argues that the decision rendered by this court in the case of Security Ins. Co. of Hartford v. Holliday, 367 So.2d 1352 (La.App. 4th Cir. 1979), is res judicata to the present suit. Regarding the exception of res judicata, however, this court stated in Bowers v. Jones-Journet, 316 So.2d 18, 20 (La.App. 4th Cir. 1975):
“Res judicata is discussed in our Civil Code in terms of the ‘thing adjudged.’ Article 3556(31) defines the thing adjudged as follows:
‘Thing Adjudged. — Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal.’ LSA-C.C. Art. 3556(31).
“There is no doubt in this case that the judgment of April 29, 1974 is a final judgment, no longer appealable. Personal service of a copy of that judgment was made on appellant on May 2, 1974 and the delays for appealing had elapsed prior to the rendition of the September 9, 1974 judgment appealed from.
“However, as provided by Article 2286 of the Civil Code, for a judgment to have the authority of the thing adjudged, the following requirements must exist: (1) the demand must be the same; (2) the demand must be founded on the same cause of action; (3) the demand must be between the same parties; and (4) the demand must be between the parties in the same quality. When a claim obtains the authority of the thing adjudged, no further suit or action may be had thereon.”
Moreover, in Tracy v. Dufrene, 240 La. 232, 121 So.2d 843 (1960), the court also said at 845:
“Hence, this Court has, as recently as 1942, recognized that a district court could declare the nullity of one of its own judgments on the ground that it had been obtained through fraud, even though the judgment had been affirmed by this Court on appeal. This, we think, is proper as we find it difficult to perceive why a judgment obtained through fraud or ill practice should be immune from an action of nullity because it has been approved on appeal by this Court, so long as this Court has not passed on the issue upon which the annulment action is based.[1]
A review of the decision of this court rendered in Security Ins. Co. of Hartford v. Holliday, supra, reveals that the issue of fraud or ill practices was never addressed by the court. In fact that opinion states at 1353:
“Garnishee, Glenn D. Rogers, appeals from an adverse money judgment in favor of plaintiff. We affirm.
“The attack by garnishee on the validity of the garnishment proceedings and the judgment rendered against him is threefold.
*854 “First, Rogers claims the rule to show cause filed against the garnishee for the amount of the unpaid judgment requires personal service. Personal service of the supplemental petition and interrogatories was made on the garnishee. However, domiciliary service of the rule was made on garnishee’s wife.
“Second, relying on LSA-C.C.P. art. 1155, the garnishee contends that the supplemental petition in the garnishment proceeding requires ‘ruling the garnishee into court.' Although not clear, garnishee apparently claims that the supplemental petition and interrogatories must be accompanied by a rule to show cause why the petition and interrogatories should not be answered.
“Third, garnishee claims LSA-C.C.P. art. 2411, requires that garnishee not only be served with a copy of the supplemental petition and the interrogatories but also with a copy of the original petition filed against the defendant in the matter. Because the original petition was not attached to the supplemental petition and interrogatories in the garnishment proceedings, garnishee claims the garnishment is fatal and plaintiff is not entitled to judgment.”
This court in the Security Ins. Co. of Hartford case, therefore, did not consider any allegations of fraud or ill practices which may have led to Rogers having a default judgment rendered against him. In the present case, accordingly, this court cannot hold that Security Ins. Co. of Hartford v. Holliday, supra, is res judicata to the action at bar.
Neither can this court hold that Rogers’ motion for a new trial or his appeal in the previous case should be considered as a general appearance, invoking the jurisdiction of the court. His acts in these regards were strictly based upon his allegations of insufficiency of service of process. LSA-C. C.P. art. 1201 states that without citation and service of process all civil proceedings, except those which are summary or execu-tory, are absolutely null. Since the motion for new trial and appeal in the previous case was based on allegations of insufficiency of service of process, we hold, that Rogers did not thereby submit himself to the jurisdiction of the court. DLJ of Louisiana # 1 v. Green Thumb, Inc., 334 So.2d 801 (La.App. 3d Cir. 1976).
In the present case all of the testimony presented by Rogers established without contradiction that the debtor, Holliday, was not employed by Rogers at the time the garnishment suit was served at his office and, therefore, he did not have property of nor was he indebted to the judgment debt- or, Holliday, at that time. Accordingly, the district court judgment annulling the prior judgment between these parties was a proper one. Because Rogers failed to answer interrogatories timely the court was also correct in assessing costs and attorney fees against Rogers. LSA-C.C.P. art. 2413 and Mid-City Investment Co. v. Batiste, 248 So.2d 88 (La.App. 1st Cir. 1970; On Rehearing April 19, 1971; Writ Refused May 24, 1971).
Although Security also asks that attorney fees assessed against Rogers be increased on appeal, we hold that those awarded by the district court are reasonable within the meaning of LSA-C.C.P. art. 2413.
For the reasons assigned, therefore, the trial court judgment is affirmed.
AFFIRMED.

“1 In this connection, it is also apt to note that the new Louisiana Code of Civil Procedure, which was recently passed by our State Legislature, and which is to go into effect on January 1, 1961, provides in Article 2006 that an action to annul a judgment must be brought in the trial court, even though the judgment sought to be annulled may have been affirmed on appeal, or even rendered by the appellate court.”