143 So. 383

## McCOY et al. v. ARKANSAS NATURAL GAS CO.

No. 31518.

June 20, 1932.

Rehearing Denied July 20, 1932.

G. P. Bullis, of Vidalia, J. R. McIntosh, of Oak Grove, and R. J. O'Neal, of Shreveport, for appellants.

J. B. Thornhill, of Monroe, and W. M. Phillips, of Shreveport, for appellee.

J. W. Elder, of Ruston, for amicus curiæ.

O'NIELL, C. J.

The plaintiffs have appealed from a judgment dismissing their suit on an exception of no cause or right of action. There are twenty-one plaintiffs, alleging that they are owners of lands in the Richland parish gas field, and that they own all of the lands within a mile from a tract of 93 acres on which the defendant, Arkansas Natural Gas Company, had an oil and gas lease in January, 1928. They allege that the defendant completed the drilling of a gas well on the 93 acres of land on the 30th of January, 1928, and, because of negligence on the part of the defendant, the gas pressure broke the casing, on the second day after the well was completed, and the gas escaped into the open air and continued so to blow uncontrolled for a period of 1,165 days. They allege that the quantity of gas thus wasted "was on an average forty million cubic feet per day," and that, under the pretext of reducing the pressure of gas in the well, the defendant drilled other wells on the same tract of land, which wells drew an average of 5,000,000 feet of gas per day over and beyond what would have been produced normally from the 93 acres of land; that the average market value of the gas at the well was 10 cents per thousand cubic feet; that the plaintiffs' interest in the oil and gas rights in their lands was one-eighth thereof; that their rights, therefore, were impaired to the extent of $655,312.50, being one-eighth of the value of the gas wasted through the defendant's negligence in failing to control the well on the 93 acres of land. They allege that the uncontrolled flow of gas from the well damaged the structure under their lands, because permitting a gas well to flow open to its full capacity disturbs the structure under the surface of the soil and impairs its vitality to an extent beyond the value of the gas withdrawn, and that the damage or loss which they suffered in that way was more than $400,000. They allege that it would be fair and equitable—and that they have agreed among themselves—that the damages which they have suffered, amounting to $1,055,312.50, should be divided among them in the proportion which the area of land owned by each of them within a radius of a mile from the defendant's well on the 93 acres of land bears to the total area of land owned by all of the plaintiffs within that radius. Hence they pray for a judgment against the defendant for $1,055,-312.50, with interest at 5 per cent. per annum from judicial demand; and they pray that the judgment be rendered in favor of each petitioner individually for the sum which bears the same proportion to $1,055,-312.50 that the area of his land lying within the radius of a mile from the well complained of bears to the total area of all of the

lands owned by the plaintiffs within that radius.

The plaintiffs do not charge that there was any willful or intentional wrongdoing on the part of the defendant in allowing the gas to escape from its well. The charges of negligence amount to nothing more than that the employees in charge of the drilling operations for the defendant used what the plaintiffs deem bad judgment in drilling the well, in allowing the gas pressure to burst the casing, and in failing to bring the escaping gas under control soon after the casing burst. Specifically, the charges of negligence are, first, that, soon after the well was completed, gas began escaping around the casing, and "this escape of gas showed that the casing of the well was leaky or broken," and was an unmistakable warning of danger that the well would go out of control unless prompt action would be taken; second, that the defendant failed to heed the warning, "and took no prompt or sufficient action to avert the danger"; third, that defendant kept the well tightly capped and closed in, from the time it was completed until it went out of control; fourth, that the casing used in the upper part of the well had been used in other wells, was of inferior quality, had deteriorated from use, was not of the weight or thickness necessary to withstand the gas pressure of the Richland field, and was not tested for strength, as required by law; fifth, that the defendant's agents and employees in charge of the well were not sufficiently experienced or competent to handle the situation properly, and were under the influence of intoxicating liquor before and when the well got beyond their control; sixth, that the defendant knew

while drilling the well that the gas pressure would be 1,100 pounds to the square inch, and failed to make adequate preparation to control the gas at that high pressure; seventh, that the well would have been kept under control if the defendant had opened the top of the casing so as to allow the gas to escape into the air until the breaks and weak spots in the casing could be repaired. It is alleged that, inasmuch as the science of drilling gas wells was well developed in January, 1928, and the nature of the Richland gas field, as to depth, pressure and other difficulties to be encountered by drillers, was well known, the fact alone that the well complained of was not controlled was evidence of negligence on the part of the defendant, under the principle res ipsa loquitur. It is alleged that the flow of gas could have been stopped within thirty days after the casing broke; that the conservation department repeatedly requested and ordered the defendant to stop the open flow of gas, and in 1930 imposed a fine of $1,000 per day on the defendant for failing to control the flow of gas; that the defendant made no effort to stop the flow of gas until March, 1931, and succeeded in stopping it on the 10th of April, 1931; that methods by which the well could have been brought under control were well known by competent drillers; and therefore that the failure of the defendant to control the well promptly was, of itself, evidence of negligence, under the principle res ipsa loquitur.

The plaintiffs allege that all of the gas which the defendant allowed to escape came from under plaintiffs' lands, and that the loss of the gas caused them damages to the extent of one eighth of the market value

of the gas; that this damage is shown by the fact that the rock pressure of gas under plaintiffs' lands, which was about 1,125 pounds to the square inch on the 30th of January, 1928, has been reduced 70 per cent., and would not have been reduced below 900 pounds to the square inch if the defendant had not allowed its well to flow uncontrolled; and that the damage thus done to plaintiffs exceeded $1,000,000.

Before filing the exception of no cause or right of action, the defendant filed an exception of vagueness and an exception of misjoinder of parties plaintiff. Both exceptions were overruled. The exception of misjoinder of parties plaintiff might have been sustained on the authority of Alessi v. Town of Independence, 142 La. 338, 76 So. 792. In that case it was held that several landowners suing one defendant for damages done to their lands, by one and the same fault, each plaintiff claiming a sum below the appellate jurisdiction of this court, could not by joining in one suit give the court jurisdiction. It was intimated that the plea of misjoinder should have been sustained. However, if the plaintiffs in that case, or in this case, had brought separate suits, they might have consolidated the cases and tried them as one. In this case the object in bringing only one suit for the joint benefit of all of the plaintiffs was, apparently, to avoid the difficulty of proving the amount of the loss or damages which each one of them had suffered—to recover for all of the loss which every landowner had sustained, within a radius of a mile from the uncontrolled well, and divide the amount according to their own agreement. Accordingly, an owner of land a mile away from the uncontrolled well would receive as much, in proportion to his acreage, for his supposed loss, as an owner of land immediately adjoining the tract of 93 acres, on which the defendant's well was drilled. There is no explanation in the plaintiffs' petition, or in their briefs, as to why they included only the owners of lands within the radius of one mile, or why they did not include the owners of lands within a longer radius, or only those within a shorter radius. We have no reason to assume—if in fact the plaintiffs expect us to assume—that all of the gas that was wasted by the alleged negligence of the defendant was gas which would have been produced by the plaintiffs, or which would have inured to their benefit, in the proportion in which each owned a part of the area within the one-mile radius, but for the alleged negligence of the defendant.

The fact that the plaintiffs in this case are the owners of all of the lands within a radius of a mile from the well complained of does not except the suit from the rule stated in Louisiana Gas & Fuel Co. v. White Bros., 157 La. 728, 103 So. 23; that is, that a landowner has no right or cause of action for damages against an owner of adjoining land for negligently permitting a well near the line to blow out and allowing the gas to escape; the only remedy being an action to enjoin the waste. In that case the plaintiff claimed damages for the same cause of action that is set forth by the plaintiffs in this case; and the court said:

"The defendant filed an exception of no cause of action, which was overruled by the court below and renewed in this court. This exception is well founded.

"Even if plaintiff were owner of that proportion of the gas in the common reservoir, which the area of its holding bears to the total area of such common reservoir, nevertheless it is not alleged (and much less could it be proved) what the area of that common reservoir may be, and what part of it lies beneath plaintiff's holdings. So that there would be no measure for any special damages which plaintiff might suffer. And as for general damages, plaintiff could recover none unless it showed that defendant had wasted (or drawn) out of the common reservoir more than its (defendant's) just proportion of the gas in that common reservoir, which, of course, plaintiff could never show.

"But plaintiff is not the owner of the gas beneath its holdings; and one of the best evidences of that, if it were not already established authoritatively, is this very impossibility of showing damages as above said."

Counsel for the appellants cite and rely upon the decisions referred to in 18 R. C. L. 1218, and in Thornton's work on the Law of Oil and Gas (5th Ed.) by Willis, vol. 2, p. 852, § 521. The cases referred to are Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N. E. 308, 311; Talbott v. Southern Oil Co., 60 W. Va. 423, 55 S. E. 1009; Louisville Gas Co. v. Kentucky Heating Co., 132 Ky. 435, 111 S. W. 374, 377; Bradford Oil Co. v. Blair, 113 Pa. 83, 4 A. 218, 57 Am. Rep. 442; and McClay v. Western Pennsylvania Gas Co., 201 Pa. 197, 50 A. 978.

■ Daughetee v. Ohio Oil Co. was an action for damages for violation of a contract of lease. The right of action, or right of recovery, had been settled by a previous decision, which was not then before the court for review. Hence it was said: "The right of recovery being assumed, plaintiff in error cannot escape liability because the damages are difficult of exact ascertainment." The court would have been begging the question if the court had said that, the right of recovery being assumed, the plaintiff in error could not escape liability because the damages were not susceptible of ascertainment. The right of action of a plaintiff claiming damages depends upon whether the damages are susceptible of ascertainment. The rule stated in article 1934 of the Civil Code, that damages are allowable in certain described cases where the loss is not measurable in money, does not mean that the matter of assessing damages may be left to mere speculation on the part of the judge or jury.

Talbott v. Southern Oil Co. is authority for the proposition merely that, in West Virginia, the lessor of land for oil and gas has a right of action for damages against the lessee for injury to the land caused by the escape of gas from a well drilled on the land by the lessee and abandoned by him. The lessee in that case neglected to plug the abandoned well, as he was required to do by a statute of West Virginia.

■ Louisville Gas Co. v. Kentucky Heating Co. is authority for the proposition merely that, in Kentucky, a landowner has a right of action for damages against a neighboring landowner in a gas field for "willfully or wantonly" wasting the gas, but not for wasting it by mere negligence. Hence the allegations in the present suit would not present a cause of action in Kentucky. The Court of Appeals of Kentucky, in that case, drew a distinction between wasting gas willfully

or wantonly and wasting it maliciously, and held that, although only compensatory damages could be allowed for the wasting of gas willfully or wantonly, punitive damages also might be allowed for a wasting of gas maliciously, and with a design to injure another in his business. There is no authority in the law of Louisiana for allowing punitive damages in any case, unless it be for some particular wrong for which a statute expressly authorizes the imposition of some such penalty. In the Louisville Gas Company's Case the court explained the limitation on the liability for damages, thus:

"Appellants also complain because the jury were told that they might award punitive damages, or 'smart money.' It is insisted for them that, as there must have been a willful or wanton waste of the gas to entitle appellee to recover at all, if they are liable, they are liable for compensatory damages only. This objection is without merit, for, while it is true appellants are not liable in any event, unless it is shown that they willfully or wantonly wasted the gas, still, if in so doing they acted maliciously, and with a design of injuring appellee in its business, a case would be made out which would authorize a recovery of punitive damages as well. Under the allegations of the petition a punitive damage instruction was authorized if there was any evidence to support it."

The two Pennsylvania cases, Bradford Oil Co. v. Blair and McClay v. Western Pennsylvania Gas Co., were suits for damages for violation of an oil and gas lease. In McClay's Case it was said that the measure of damages for the lessee's breach of his contract to test the well for oil before abandoning it was what the lessor's royalties would

have amounted to, where the lessee left the well in such condition that it could not be tested, and the failure to test it was not unavoidable, or the lessee left it in such condition that it could have been tested, but the lessor did not know it.

■■ The judgment rendered in this case must be affirmed, unless we intend now to overrule the decision rendered in Louisiana Gas & Fuel Co. v. White Brothers, supra. We do not rest our decision in this case altogether upon the proposition that a landowner does not actually own the oil and gas beneath the surface of his land, but has only the right to drill for the oil and gas and to become the owner of such as he may bring into his possession. That right is as well entitled to the protection of the law as is the ownership of corporeal property. It is conceivable, therefore, that a case might be presented where a landowner would be entitled to damages for loss or impairment of his oil or gas rights by some fault of a neighbor on his own land. But the fault in such a case would have to consist of something more than a mere exercise of bad judgment on the part of the neighbor in drilling on his own land, and the loss sustained by the complaining neighbor would have to be measurable, approximately, if not exactly, in money. An illustration of a case where such damages could be estimated would be one where the market value of the plaintiff's land or mineral rights is impaired by the fault of his neighbor. We rest our affirmance of the judgment appealed from in this case upon the fact that, according to the plaintiffs' allegations, the negligence complained of consisted merely of the defendant's using bad judgment in the opinion of the plain-

tiffs, and the loss complained of was, manifestly, more a matter of uncertainty and speculation than of fact or estimate.

The judgment is affirmed.

ST. PAUL, J., concurs in the decree.

ODOM, J. (dissenting).

The majority opinion holds that plaintiff's petition discloses no cause or right of action, for two reasons: First, that "the negligence complained of consisted merely of the defendant's using bad judgment in the opinion of the plaintiffs;" and, second, that "the loss complained of was, manifestly, more a matter of uncertainty and speculation than of fact or estimate."

As to the first, I think the allegations show more than mere bad judgment on the part of the defendant. It is alleged, for instance, that the casing used in the upper part of the well was of inferior quality and was not tested as the law requires; that defendant's agents in charge of the well were not experienced, and were under the influence of intoxicating liquor when the well got beyond their control; that defendant failed to make adequate preparation to control the gas; that the flow of gas could have been stopped within thirty days, and that the department of conservation imposed a fine on defendant for its failure to stop the flow of gas and its failure to control it; that defendant made no effort to stop the flow of gas until long after the well came in; and that methods by which the well could have been brought in were well known to competent drillers.

These allegations I think clearly and unmistakably show fault and negligence on the part of defendant, and not merely bad judgment.

If the law requires those who drill gas wells to have the casing tested before being used, and they fail to do so, that is not a matter of poor judgment, but negligence pure and simple. If defendant could have brought the well under control and failed to do so, that was negligence, not bad judgment.

But, aside from this, one cannot escape liability for injuries which he inflicts upon others by pleading that the injury resulted from the exercise of bad judgment. The exercise of bad judgment is a "fault" as that word is used in article 2315 of the Civil Code, which provides that:

"Every act whatever of man that causes damage to another, obliges him by whose *fault* it happened to repair it." (Italics ours.)

This is an action in tort. It is grounded on fault and negligence. In the majority opinion it is stated that plaintiffs fail to allege that there was any willful or intentional wrongdoing on defendant's part. That failure in no sense affects the case, for under our law we are responsible for the damage we cause others to suffer through our fault or negligence, even though the act which causes the damage be not willfully or intentionally done. Our tort law is grounded on negligence, and not on willful wrongdoing.

As to the second point, that the loss complained of was a matter of uncertainty and speculation, I have only this to say:

I feel sure that plaintiffs would experience serious difficulty in proving their case, but I think they should be given a chance to try. They have undoubtedly been seriously affected by the open flow of gas from this

well. They think they have a case, and most seriously avow that they can prove their loss and damage with some degree of certainty. They allege that the substructure of their land has been damaged to the extent of at least $400,000, and say they can positively prove this by experts. I do not think the members of this court are in position to say in advance that they cannot do so. I for one am not. For that reason I am not willing to throw them out of court without a hearing. I dissent.