## Western Union Telegraph Co. v. Ramsey.

(Decided Dec. 11, 1935.)

J. J. MOORE, HENRY J. SCOTT, EDWARD P. HUMPHREY and MARVIN H. TAYLOR for appellant.

STRATTON & STEPHENSON and O. T. HINTON for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is an action for damages for failure to make delivery of a telegram.

The appellee, J. A. Ramsey, was employed as a salesman at Raleigh, N. C., by Wilson & Co. He received a salary of $28.35 per week, plus a weekly expense account of $11, and had been regularly employed by the company for more than four years. He was not employed for any definite term, and Wilson & Co. had the right to discharge him at any time. On December 26, 1932, Ramsey notified his superior, G. F. Linkous, the branch manager of Wilson & Co., at Raleigh, that his wife and children, who were then in Paintsville, Ky., were ill, and asked for a leave of absence that he might visit them. Linkous granted him a leave of absence, but requested Ramsey to keep him informed as to the condition of his wife and children, and when he might expect him to return. Ramsey left Raleigh in an automobile, and arrived in Paintsville, Ky., on December 28, 1932. On January 2, 1933, Linkous addressed to Ramsey the following message on one of the Western Union Telegraph Company's standard form message blanks:

"Have not heard from you presume you are not returning if do not hear by morning will figure accordingly."

The message was promptly dispatched to Paintsville, but was never delivered to the appellee, J. A. Ramsey. The message was given to a messenger boy who delivered it to W. A. Ramsey, a resident of Paintsville, who failed to notify the telegraph company that the message was not intended for him. On January 6, 1933, appellee wired Mr. Linkous that he would return to Raleigh the following Monday. Upon receipt of this telegram, Linkous wrote to appellee as follows:

"I wired you the following Monday afternoon, have not heard from you presume you are not returning if do not hear by morning will figure accordingly.

"It has been circulated in Raleigh that you did not intend to return and after you had been gone for several days and I did not hear from you I naturally thought that this report was correct. I got in touch with Mr. Williams, concerning another man for the territory.

"I feel that you have shown Wilson & Co., as well as myself very little consideration by going off and not keeping us posted as to what you expected to do. However, if Mr. Williams sees fit to place you on some other territory, I will have nothing further to say in regards to same. In other words this case is left entirely up to Mr. Williams for disposal."

Ramsey failed to secure his old position or other employment with Wilson & Co., and on March 31, 1933, he brought this suit in the Pike circuit court against the Western Union Telegraph Company to recover damages which he alleged he sustained by reason of the loss of his position. Upon the trial of the case, the jury returned a verdict in favor of the plaintiff for the sum of $1,500, and from the judgment entered thereon the telegraph company appeals.

The principal grounds urged for a reversal of the judgment are: (1) The telegraph message sent by Linkous to appellee did not show on its face, nor did the telegraph company have other knowledge, that a business transaction was involved and that the appellee would suffer pecuniary loss from delay in the delivery of the message and, therefore, only nominal damages are recoverable; and (2) Wilson & Co. was not legally obligated to continue appellee in its employment for any definite or fixed period of time, and there can be no recovery of more than nominal damages.

In view of our conclusion that the judgment must be reversed on the second ground relied upon by appellant, it is unnecessary to determine whether or not the message showed on its face that it related to a business transaction and that loss would probably result unless it was promptly transmitted and delivered. For the same reason, it is unnecessary to mention or discuss other grounds for reversal presented by appellant.

It is conceded that Wilson & Co., appellee's employer, had the right to discharge him with or without cause, at any time. His employment was at the will of his employer. A contract of employment which is not definite as to time is terminable by either party at will. Clay v. Louisville & N. R. Co., 254 Ky. 271, 71 S. W. (2d) 617; Hardy v. Myers, 206 Ky. 562, 267 S. W. 1110;

Hudson v. Cincinnati, N. O. & T. P. Ry. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A. (N. S.) 184, Ann. Cas. 1915B, 98; Louisville & N. R. Co. v. Offutt, 99 Ky. 427, 36 S. W. 181, 18 Ky. Law Rep. 303, 59 Am. St. Rep. 467.

This rule of law is not disputed by appellee, who concedes that he could not have recovered damages from his employer if he had been discharged at any time, since his employment was not for any definite term and his employer was under no legal obligation to continue the employment. It is his contention that this case is not within the class of cases which deal with the right of an employee to recover from an employer for breach of contract of employment, and that an entirely different rule should apply to a case where the termination of employment has been caused by the tortious act of a third person, and that a fundamental distinction exists between actions in contract and actions in tort.

It may be conceded that a different measure of damages applies. The damages recoverable for breach of contract are such as are actually sustained or such as it is reasonable to conclude were within the contemplation of the parties at the time the contract was entered into. In an action in tort, the damages recoverable are such as actually flow from the wrongful act, although the particular consequences may not have been contemplated when the wrongful act was committed. Kentucky Heating Co. v. Hood, 133 Ky. 383, 118 S. W. 337, 22 L. R. A. (N. S.) 588, 134 Am. St. Rep. 457.

However, to authorize a recovery of more than nominal damages, facts must exist which afford a basis for measuring the plaintiff's loss with reasonable certainty, and the evidence must be such that a jury may find the amount of his loss, not by conjecture, speculation, and surmise, but by reasonable inferences from established facts. When a person employed for a definite period loses his position through the negligent act of a third person, the damages sustained by him can be ascertained with reasonable certainty in an action against the wrongdoer. His measure of damages is the amount his employer would have been legally obligated to pay him under the contract less what he actually made or, in the exercise of reasonable diligence, could have made in other employment during the corresponding time. Where the employment is for no definite time, but is at the will of the parties, and the em-

ployee loses his position through the negligence of a third party, no standard exists for determining the amount of his damages. It is necessarily a matter of speculation. In the present case, appellee's employment by Wilson & Co., but for appellant's failure to deliver the telegram in question, might have continued one day, one month, one year, or many years. Likewise, the time that would elapse before he could, in the exercise of reasonable diligence, find other employment would be uncertain. In submitting the question of damages to a jury, no satisfactory standard could be given them by which to assess the amount of his damages. Any verdict that might be returned would be the result of speculation and guesswork. The right of an addressee of a telegram to maintain an action for damages against a telegraph company for its negligent failure to deliver the telegram, or deliver it promptly, is recognized in this jurisdiction. Western Union Telegraph Co. v. Caldwell, 126 Ky. 42, 102 S. W. 840, 31 Ky. Law Rep. 497, 12 L. R. A. (N. S.) 748. However, the precise question presented by this appeal has never been before this court, though it has been decided in a number of other jurisdictions.

In Merrill v. Western Union Telegraph Co., 78 Me. 97, 2 A. 847, 848, the plaintiff's agent made a contract with a manufacturer for the employment of plaintiff at $2.25 per day, the employment to begin on a specific day. He sent a telegram to the plaintiff notifying him of the terms of the contract, and the telegraph company failed to deliver the message, and plaintiff thereby lost his employment. The court said:

> "The defendant denies liability beyond nominal damages. The contract was defeasible at the will of either party. How, then, can any substantial damage be measured? Had the engagement to employ the plaintiff been for a stipulated and definite period, not over one year, the plaintiff would have a right to demand damages that could be definitely measured and assessed. He would then have been entitled to enjoy the fruit of his labor during the time of his engagement; but, under the terms of the contract in proof, he was liable to be dismissed from his employment as soon as he had entered upon it, and it cannot be known what damages he has suffered in the premises. The plaintiff

must prove his damages before they can be assessed. The case fails to show facts that warrant greater than nominal damages.''

In Fulkerson v. Western Union Telegraph Co., 110 Ark. 144, 161 S. W. 168, Ann. Cas. 1915D, 221, the telegraph company failed to deliver a message offering plaintiff a contract of employment, which was construed as a contract of employment, at will terminable by either party. It was held that it could not be presumed in an action for damages that the employment would continue for any given length of time so as to entitle plaintiff to a recovery for his loss during the period, and that evidence of the profits he would have made had he obtained the position was inadmissible.

In Kenyon v. Western Union Telegraph Co., 100 Cal. 454, 35 P. 75, 76, the plaintiff lost an appointment as deputy city assessor at a salary of $75 per month, on account of the negligent failure of the telegraph company to deliver to him promptly a telegram containing the offer. In holding that he was entitled only to nominal damages, the court said:

>"In the case at bar it is not necessary to consider whether the damages claimed were too remote, since it is clear they were speculative and uncertain. The allegation is that plaintiff would have been appointed deputy, and that the salary paid a deputy in that office is $75 per month. But it is not alleged that the city assessor would have contracted to employ him for any definite length of time. A deputy is appointed to hold during the pleasure of the officer appointing him. * * * The allegation, therefore, that he would have received the appointment, is not an allegation that he would have been retained for any definite length of time; nor could such allegation be made. He might have received the appointment and been discharged the same day, either for cause or without cause; and, as damages or compensation must be measured by the loss sustained, where that loss cannot be ascertained damages cannot be recovered.''

To the same effect are Larsen v. Postal Telegraph Cable Co., 150 Iowa 748, 130 N. W. 813; Mondon v. Western Union Telegraph Co., 96 Ga. 499, 23 S. E. 853; Baldwin v. Western Union Telegraph Co., 93 Ga. 692,

21 S. E. 212, 44 Am. St. Rep. 194; Western Union Telegraph Co. v. Thompson (Tex. Civ. App.) 299 S. W. 279; Walser v. Western Union Telegraph Co., 114 N. C. 440, 19 S. E. 366.

Appellee relies upon McMillan v. Western Union Telegraph Co., 60 Fla. 131, 53 So. 329, 29 L. R. A. (N. S.) 891, which apparently announces a contrary rule; but, when the facts are analyzed, the case is really not in conflict with the cases heretofore cited. The plaintiffs in that case were engaged in the business of manufacturing and selling brick, and entered into a contract with the Camden Hardware Company whereby the latter agreed to buy from them brick at the rate of four cars per week beginning June 1, 1906, until notified to stop. The brick were purchased by the hardware company for the purpose of erecting a certain building which it had contracted to build. For the erection of the building, 150,000 brick would be required. It was alleged in the plaintiffs' petition that it was understood between them and the hardware company that the hardware company expected to buy from plaintiffs all of the brick which would be required for the building. On June 4, 1906, the hardware company delivered to the telegraph company for transmission and delivery to the plaintiffs this message: "We want some brick when are you going to ship." The telegraph company negligently failed to deliver the message until June 6, 1906, and in the meantime the hardware company contracted for its brick elsewhere. It was held that the fact that the sender of the message could put an end to the contract at any time did not, of necessity, destroy the action in tort against the telegraph company. It will be noted that the only element of uncertainty as to the volume of business was the ability of the seller to please. The contract called for the shipment of four cars of brick per week. The brick were purchased for the purpose of erecting a certain building, and 150,000 would be required. Although the purchaser could have terminated the contract at any time, under the facts alleged in the petition it was a reasonable inference that the hardware company would have purchased from the plaintiffs all of the brick required by it in the construction of the building had the telegraph company delivered the message promptly. The facts furnished a reasonable basis for fixing the damages suffered by the

plaintiffs by reason of the negligence of the telegraph company in failing to deliver the message promptly.

When a telegraph company negligently fails to deliver a message, resulting in a loss of employment, it is not such an interference with the making of a contract as is meant when some third person intentionally causes the breach of a contract. In the latter case, the gist of the action is the malicious intent on the part of the wrongdoer. The liability of the telegraph company results from its failure to discharge its duties toward the public and the contracting parties. Its act of omission or commission might be of such a nature as to amount to malicious interference and so to warrant the award of exemplary damages, but such is not the case here.

Having concluded that the trial court erred in submitting the question of substantial damages to the jury, the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.

Whole court sitting.

Clay, C. J., and Ratliff, J., dissenting.