## UNITED STATES v. HUFF.

## UNITED STATES v. BLAND.

## UNITED STATES v. ARLEDGE et al.

## UNITED STATES v. ARLEDGE.

### Nos. 12579–12582.

United States Court of Appeals
Fifth Circuit.

June 29, 1949.

Rehearing Denied July 21, 1949.

A. W. Christian, Asst. U. S. Atty., Fort Worth, Tex., for appellant.

Dallas Scarborough, Abilene, Tex., Jack Sayles, Abilene, Tex., for appellees.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

This is the second appeal in this case. We consider it unnecessary to restate the case at length, since a full and complete statement of the entire controversy is set forth in United States v. Huff, 5 Cir., 165 F.2d 720, 1 A.L.R.2d 854.

The owners of approximately 68,412 acres of adjoining tracts of land near Camp Barkeley in Taylor County, Texas, executed leases of their land to three named trustees in order that the trustees might include same in a "blanket lease" of all the tracts to the Government, for use as an Army training and maneuver area and as an artillery firing and target range during World War II. The trustees did execute such blanket lease, which was dated January 2, 1941, and expired July 1, 1943.

Under the provisions of the lease agreement the Government agreed to pay one dollar per acre annual rental for the leased area. However, at the time the blanket lease was executed, the lands in question were already under lease to certain ranchers who were engaged in raising sheep and goats thereon, the rental to these tenants being fifty cents per acre. In consideration of the Army's occupancy of the land and of the use for which it was intended the owners of the land agreed with their respective tenants to reduce their rent from fifty to twenty-five cents per acre for the duration of the blanket lease agreement, and on that portion of the leased land which was to be used as an artillery firing range, no further rent was to be charged. The tenants accepted the proposed reduction in their rent, and consented to the Army's occupancy of the land with knowledge that

it was to be used for war time troop training under simulated combat conditions.

It is alleged in each complaint that the district court had jurisdiction of the suits under the Tucker Act, Title 28 U.S.C.A. § 41(20), now section 1346(a) (2), and liability on the part of the Government under that enactment is predicated upon the following provisions of the blanket lease agreement:

"12. The Government will not be liable, during the life of this lease, or any renewal thereof, for the loss of, or damage of any nature to livestock that may be on said premises, save and except the loss of, or damage to, said livestock due to negligence on the part of the Government or its agents or employees.

"13. The Government shall have the right, during the existence of this lease, to let down any wire on the now existing wire fences, with the understanding that following the crossing of said fences by the troops, the Government will restaple the said wire to the posts, and leave the fence in as good condition and repair as it was at the time of entry upon the leased premises by the Government."

■ On the former appeal this court held,[1] in reversing and remanding the case for a new trial, that the suits were properly brought under the Tucker Act, 28 U.S.C.A. § 1346(a) (2); that while the plaintiffs were not parties to the contract, "the lease was drawn with the double purpose of benefiting both the owners of the lands in question and their tenants," and that as such tenants they were entitled to maintain these suits. It was stated, however, that upon another trial "The evidence should be limited to evidence of damages proximately caused by breach of the contract by failure to repair the fences. All other evidence of damages arising either out of the Army's use of the land consistent with the purposes of the lease (e. g., pollution of the water), or out of negligence independent of the contract to maintain the fences, should be excluded." We find each of these rulings to be the law of the case, and binding on this appeal. United States v. Huff, 5 Cir., 165 F.2d 720, 723, 1 A.L.R.2d 854.

Throughout both trials and on the former appeal these four companion cases have been consolidated by us and the district Court, and since they have consistently presented substantially similar issues of law and fact, we shall consider and dispose of them together on this second appeal. The entire evidence adduced upon the second trial is set out in the case of United States v. Elmer Huff, No. 12,579, the records in the other three cases containing only their respective pleadings and judgment entries. In each case, plaintiffs are either the tenants or heirs of a deceased tenant of the lands included in the blanket lease to the Government.

The trial court has again rendered judgments for plaintiffs in each case, which judgments are supposedly predicated on the loss of sheep and goats resulting from the destruction of the fences by the Army during the life of the lease contract. However, from a careful and painstaking review of the entire record evidence we are led unerringly to the conclusion that, with the exception of those damages allowed for the actual destruction and cost of repairing the fences, the damages proved were entirely speculative in nature, and must therefore be disallowed.

■ It is without dispute that .in each case the damages awarded for the loss of sheep and goats was determined by first computing the number of animals on hand at various intervals throughout the term of the lease agreement, then making allowance for a normal increase in birth and subtracting a normal death loss, and finally comparing the resulting figure with the number of sheep and goats on hand at the end of the lease period. The discrepancy between the number of animals then remaining, and the number which plaintiffs should have had, according to the above theory of computation, was considered as a loss directly attributable to the Government's failure to maintain and repair the fences, in accordance with its contractual obligation under the lease agreement. The practical effect of the trial court's ruling in awarding damages on the above theory was to allow plaintiffs to recover the differ-

---

[1] Judge Hutcheson dissenting.

ence between what their losses would have been, but for the Army's occupancy of the land under the lease agreed upon, and what they actually were, without taking into proper account evidence which revealed that the losses were, in many instances, occasioned by conditions and causes for which the Government was not responsible or liable.

The evidence reveals loss and damage to the sheep and goats resulting from various causes, such as pollution of water, dry mouth, screw worm, bad feed, loss from dogs, through fences destroyed by artillery fire, and various other factors.[2] Obviously, the Government would not be liable for many of such losses, as the Army activities causing same were consistent with the purposes of the lease to the Government, and the losses therefrom were reasonably foreseeable as an inevitable result of the intended use of the land, for which at least some consideration was provided the tenants in the lease agreement. United States v. Huff, 5 Cir., 165 F.2d 720, 1 A.L.R.2d 854. Moreover, there has been no sufficient showing of how much of the damage from the loss of the sheep and goats was proximately caused by the Government's failure to maintain and repair the fences under the lease, and how much of the damage resulted from the various other causes. There is no testimony whatever as to the specific dates of loss of any of the sheep and goats, or as to their age, weight, condition and fair market value at the time of the alleged losses.[3] It therefore becomes patent that the evidence as to the loss of these animals in each case fails to rise above mere speculation and guess.[4]

While it may be inviting to approve the trial court's findings and allow at least a partial recovery for such losses, it remains our solemn duty under this evidence to disallow these unproved claims, as it is well settled that speculative damages are not recoverable. It was incumbent upon these plaintiffs to adduce some clear and convincing proof of specific losses resulting solely from the Government's failure to repair and maintain the fences, and this they have signally failed to do. Chicago B. & Q. R. Co. v. Gelvin, 8 Cir., 238 F. 14, 22, L.R.A.1917C, 983; Pennsylvania R. Co.

---

[2] One witness testified as follows:

"Q. Did you see the soldiers around the water holes or on the creek? A. Yes, sir.

"Q. Did you see them bathing in the water? A. Yes, sir.

"Q. Did they leave any of the water holes for the livestock? A. No, sir.

"Q. And what effect now did bathing in those water holes and using soap and so on have on the livestock about drinking? A. Well, they wouldn't drink it, they would take the dry mouth, you know.' * * * They would die. * * *"

J. W. Arledge, Jr., further testified:

"A. Well, when the fences would be torn down, these sheep would stray off * * * and we couldn't tell what happened to the sheep, because I didn't know, I just know I never did find them. I don't know whether the dogs killed them, whether they strayed clear off, or what happened to them * * *".

[3] In their sworn pleadings plaintiffs even allege: "No record was kept or could be kept of each instance or occasion and the number of goats and sheep which were injured and damaged. The goats and sheep were damaged by being deprived of good wholesome water, starving for water until forced to drink such contaminated water caused deterioration in strength, flesh and texture of wool and mohair.

"The date, locality and circumstances of the loss of each head of livestock alleged in the Amended Complaint to have been lost, cannot be stated. The loss was arrived at by the number of sheep and goats plaintiff had on hand at the dates alleged in paragraph 8 of the Amended Complaint, plus normal increase by birth, less a normal death loss, and the number of sheep and goats on hand on July 1, 1943."

[4] The trial court evidently recognized the insufficiency of the proof in these cases in the following remarks: " * * * From the very nature of the situation, the evidence is not as satisfactory, and not as definite as we might like, but the law recognizes the principle of evidence that a case may be established by the best evidence which it is susceptible. We think it is sufficient to this case to establish certain damages. * * * The Court is unable to say what portion of the damage to these young animals was due to the absence of the fences and the straying and mixing of the herds and what portion was due to their being deprived of the water supply. * * *"

v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819; Patton v. Texas & P. Ry. Co., 179 U.S. 658, 21 S.Ct. 275, 45 L.Ed. 361; Gulf Refining Co. v. Mark C. Walker & Son Co., 6 Cir., 124 F.2d 420; Cf. United States v. 26,699 Acres of Land, 5 Cir., 174 F.2d 367.

Although the evidence is insufficient to support the judgments in favor of plaintiffs as to the damages suffered from the loss of their sheep and goats, we find that damages were properly awarded to the plaintiffs, Huff and Bland, for the destruction of their fences, and the cost of repairing same. United States v. Huff, 5 Cir., 165 F.2d 720, 1 A.L.R.2d 854; 25 C.J.S., Damages, § 144, p. 788.

It follows that the judgments in favor of Elmer Huff and Robert Bland, Jr., are reversed and remanded with directions to award only those damages entered for actual destruction and necessary repair of the fences, being $832.95 plus interest for Huff, and $500.00 plus interest for Bland, respectively.

The judgments in the other two cases of George B. Arledge et al., and Joe Wheeler Arledge, Jr., are reversed and remanded with directions to enter judgment in favor of the United States.[5]

[5] The trial court did not award any damages to these plaintiffs for the destruction and repair of any fences caused by the Army's occupancy, and they have not appealed from his action in this regard.