UNITED STATES v. SCRINOPSKIE et al.

No. 12841.

United States Court of Appeals
Fifth Circuit.

Feb. 6, 1950.

Warren G. Moore, U. S. Atty., Tyler, Tex., Pat Lynch, Attorney, War Assets Administration, Winchester, Tenn., for appellant.

H. M. Rovenger, Dallas, Tex., W. R. Sessions, Dallas, Tex., for appellee.

Before McCORD and WALLER, Circuit Judges, and RICE, District Judge.

WALLER, Circuit Judge.

Appellees purchased from the War Assets Administration at Oak Ridge, Tennessee, "as is, where is," F. O. B. cars Oak Ridge, approximately 400 portable welding machines. All of these machines had been used and some were in a very bad state, and some were in a less bad state, of repair, while some were in fair condition. Concededly, however, a number were valuable only for their parts or for junk. Appellees bought them at $80.00 per machine. When they arrived in Grand Prairie, Texas, most of them were in bad shape, due either to the condition they were in before the purchase, or the negligence of the United

States in handling and loading, or of the railroad in transportation. The Government and the Texas & Pacific Railroad, the last carrier, were sued jointly by the purchasers. They alleged that the employees of the United States were negligent in failing to brace and to fasten down these machines when loading them in the freight cars. They alleged that the Railroad Company was negligent: (1) in the operation of the train that carried the machines; (2) in not ascertaining by proper inspection whether or not the loading of the machines was adequate for their transportation without resulting damage. They also alleged that the Railroad was liable as an insurer for the damage to the machines which it had agreed and undertaken to transport safely.

■ Even though whatever duty the United States owed to the Plaintiffs in this case arose out of a contract of sale wherein the seller agreed to load the machines on the cars, nevertheless, counsel for the Government conceded in oral argument that since the breach was of an *implied obligation,* as distinguished from the breach of a *specific promise* in the contract, the Court had jurisdiction under the Federal Tort Claims Act. 28 U.S.C.A. § 1346, 2671 et seq. The Court below agreed, and so do we, that this view was correct.

The United States filed a motion to dismiss and asserted, among other things, that there was no authority in the law for the joinder of the Railroad Company as a party defendant in the suit with the United States. The motion to dismiss was overruled except that the Court ordered the cause dismissed as to the Railroad Company. To this action no exception or appeal was taken by the United States.

There was great difficulty in ascertaining or establishing a computable difference in market value of the machines when purchased from the United States at Oak

Ridge and the market value of same when they arrived at Grand Prairie. There was testimony that many of the breaks, bends, and batterings were fresh, and that the damages claimed took into consideration only such mutilations as revealed fresh breaks, scratches, indentations, etc., of the metallic elements of the machines.

■ The record does not reveal why the Railroad Company was dismissed from the suit, but we assume it was because it would have been entitled to a trial by jury in any suit charging negligence, whereas no jury could be allowed in a suit against the United States under the Tort Claims Act. It does not appear to have been considered by the lower Court whether the claim against each Defendant might not well have been tried separately under Rule 42(b), Federal Rules Civil Procedure, 28 U.S.C.A.[1] Be that as it may, there is no appeal or cross assignment of error based upon the order dismissing the Railroad Company, and since the dismissal was procured at the instance of the Government it now should not be heard to assert error in such dismissal or to insist that judgment should have been rendered against the codefendant whose dismissal from the case it had procured.

■ The trial Judge, during the concluding part of the trial, expressed grave doubt as to whether or not the amount of the damages had been proven with sufficient accuracy to enable the Court to reduce same to judgment. Nevertheless, his findings of fact and conclusions of law, formally filed in the case sometime later, expressed no such doubt but found all the essential facts of the case with the Plaintiffs, and it is to these that we must look in order to discover the judicial thinking and conclusions that went into the judgment, which he rendered for the Plaintiff in the sum of $7,500.00, in which amount, we think, is well within the range of the testimony—in fact, considerably below the testimony of the Plain-

1. Rule 42(b), F.R.C.P., reads as follows: "Separate trials. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

tiffs as to the amount of the damages sustained.

■ There was ample testimony in the record to justify the Court in concluding that the employees of the United States were negligent in failing properly to brace, block, and fasten these machines in the cars—many of which were on wheels and susceptible of rolling back and forth— and that such failure was a proximate cause of the damage.

The Government in its brief insists that since three of the carloads of machines came through to Grand Prairie without substantial damage to the machines it must be concluded that the Railroad was negligent in the handling of the other shipments and that its negligence was the proximate cause of the damage.

Even though the evidence undertaking to measure the damages is not as definite and assuring as the Court craves in its quest for certainty, nevertheless, Plaintiffs' damages, being based upon the difference, if any, in the fair market value on the date of the acquisition by Plaintiffs and on the date of the delivery to them at Grand Prairie, are here, as often elsewhere, a matter of opinion and not susceptible of proof to a mathematical certainty in dollars and cents. However, it does appear that the Plaintiffs paid $80.00 per machine at Oak Ridge and there is testimony in the record that the market value of the machines at Grand Prairie would not be in excess of $35.00 per machine as a lot, or $50.00 per machine if each were sold separately. There is testimony by the Plaintiff that the machines were in vastly better condition before shipment than when received, and that the fresh breaks reveal recently inflicted injury. There are photographs in evidence of practically every machine showing the damaged parts of some on arrival at Grand Prairie. There are also photgraphs of many of the machines in the railroad cars before unloading showing their dishevelled position and battered condition.

We are convinced from the evidence that substantial damage was caused to the machines either through negligence in loading or in transportation, but since there is no evidence to fasten the proximate cause upon the Railroad, save the inference to be drawn from the fact that three out of the ten carloads shipped came through in fair shape, and since there is sufficient evidence in the record to support the Judge's findings that the negligence of the United States in failing to brace, support, and tie down the machines in the cars was the proximate cause of the damages, the judgment should be affirmed, and it will be so ordered.

Affirmed.

McCORD, Circuit Judge, dissenting.

I cannot agree with my brothers that the evidence here adduced justifies an affirmance of the judgment against the United States. The proof as to the damages in this case fails to rise above mere speculation and guess, and for that reason alone the damages awarded should be disallowed. United States v. Huff, 5 Cir., 175 F.2d 678; Western Union Telegraph Company v. Ramsey, 261 Ky. 657, 88 S.W.2d 675, 103 A.L.R. 541; L. O. Shannon v. Shaffer Oil & Refining Company et al., 10 Cir., 51 F.2d 878, 78 A.L.R. 851.

In summing up the evidence the trial court expressed grave doubt as to the sufficiency of the proof offered in this wise: "The Court: I am not saying that you are not entitled to profit on it, but the point is what was the condition of these machines when they arrived there, and from that adduce what the market value was, because this guess that Graves gives is just the sketchiest kind of an estimate, because he just blankets 250 machines and says in his opinion they were only worth 35 or 50 dollars, and that is a little bit too loose and generous speculation with even the Government's money even in this day and time, and *I am not going to make any finding for you based upon a general estimate of that kind* * * * the principal difficulty is the fact that all of these were pretty well used machines * * * the shipping records indicate that virtually all of these, or a great percentage of these machines were

in need of repairs and were so at the time of sale. * * * *I am just going to have to do some high powered guessing,* but if you are right on your proposition of this being a right under contract instead of tort, it wouldn't prejudice it. * * * *the only testimony in the record which in my opinion would warrant an estimate of damages* is that of the witness Graves who testified in substance that there were approximately 250 of these machines which had sustained fresh damage through shipment and that from his examination and investigation of these he expressed the opinion that the value of the machines, the damaged machines as a lot ranged from $35 to $50 per machine. * * * based upon that testimony I am concluding that there is a difference in the market value of the machines between the time of loading on the cars at Oak Ridge, Tennessee, and in the condition in which they arrived at Dallas of $30 per machine, and 250 machines, and that I am going to find for the plaintiffs in the total sum of $7,500; *that is the best guess* I can make about it, gentlemen. *It is not satisfactory from the evidence,* * * * I think that his estimate was high, but that is the best I can do about it * * *" (Italics mine).

It is well settled that in a suit to recover unliquidated damages the burden is on the plaintiff to adduce some clear and convincing proof of specific loss resulting solely from the negligence of defendant, and it is prejudicial error to award judgment where, as here, the proof admittedly measures only to speculation, guess, or a wholly uninformed estimate. United States v. Huff, 5 Cir., 175 F.2d 678, 680; Western Union Telegraph Company v. Ramsey, 261 Ky. 657, 88 S.W.2d 675, 103 A.L.R. 541; L. O. Shannon v. Shaffer Oil & Refining Co. et al., 10 Cir., 51 F.2d 878, 78 A.L.R. 851; John A. McCoy et al. v. Arkansas Natural Gas Company, 175 La. 487, 143 So. 383, 85 A.L.R. 1147. Moreover, the evidence here further fails to exclude the reasonable hypothesis that at least some of the damage alleged is chargeable to the carrier alone, and that the manner in which the machines were loaded by the Government was therefore not the proximate cause of the damage to them in transit. There is evidence that when they were unloaded at their destination in Grand Prairie, Texas, the machines in seven or eight of the cars were badly jumbled together. Some of the machines, weighing several hundred pounds each, were on top of others three deep, as if they had been "humped" by the railroad in a switching yard, in spite of a warning placard which had been placed on all four sides of the ten box cars reading, "Do Not Hump". Moreover, the welding machines in approximately two or three of the box cars reached their destination in good condition, even though these were all loaded and packed, braced, and blocked in the same manner as the machines in the other cars claimed to be damaged. While no presumption or inference of liability on the part of the railroad carrier may now be invoked by the government as a defense, since the railroad is no longer a party to the suit, nevertheless it was still incumbent on plaintiffs to prove that the alleged negligence of the government was the sole and proximate cause of the damage to this shipment, and this they have signally failed to do. United States v. Huff, 5 Cir., 175 F.2d 678, 680; 38 Amer.Juris. 973, Negligence, Sec. 285.

It is without dispute that every one of these welding machines claimed to have been damaged through negligent loading on the part of the government were sold to these plaintiffs as used machines on a strictly "as is" basis, and at but a small fraction of their purchase price when bought new by the government. Some of the machines were admittedly worthless except for parts, and all were in a second hand and partially damaged condition when shipped. The witness Graves, upon whose testimony alone the trial court admittedly bases its judgment, swore that he had never even seen these machines until they arrived at their destination in Grand Prairie, Texas, and that the only basis he had for computing their condition and value when shipped was by observing that "fresh damage" had apparently been sustained by them during

transit.[2] Although the evidence gives rise to strong inferences that the damage to this shipment, if any exists, may have been chargeable to the carrier, the railroad has been dismissed from the suit on motion of the government and the record fails to reveal the reason for this action. I do not believe the government should be penalized by an affirmance of the judgment with these errors manifest upon the record merely because the case may have been poorly tried. This court is entitled to know what the true situation really was, and justice requires that the case at least be reversed and remanded for a full and fair hearing to all parties.

I conclude that on the record here presented there is no sound legal basis for affirming the judgment, and I therefore respectfully dissent.

2. In this connection, the sales agreement between the government and plaintiffs expressly provided:

"(9) The seller will not be responsible for damage to property incurred

* * * (b) After delivery of possession to common carrier for transportation."