**Bobby Joe ROGERS, Appellant,**

**v.**

**Denton SULLIVAN, Appellee.**

Court of Appeals of Kentucky.

Dec. 16, 1966.

As Modified on Denial of Rehearing
Feb. 10, 1967.

Henry O. Whitlow, Waller, Threlkeld & Whitlow, Paducah, for appellant.

Louis V. Mangrum, Mayfield, for appellee.

PALMORE, Chief Justice.

The appellee, Sullivan, sustained a dislocated right hip and right shoulder in a collision between an automobile driven by Rogers, the appellant, in which Sullivan was riding as a passenger, and a vehicle driven by one Perkins. His suit against Rogers and Perkins resulted in a $30,000 verdict and judgment against both defendants. Rogers appeals, asserting the following grounds:

1. Error in refusal to declare a mistrial.

2. Error in overruling objection to question asking medical witness to comment on the "possibilities or probabilities" of Sullivan's complete recovery.

3. Erroneous instructions authorizing recovery for permanent impairment of earning power.

4. Excessiveness of the verdict.

During cross-examination by counsel for his co-defendant, Rogers was asked whether the investigating police officers had given him a citation, to which question the court sustained an objection but declined to declare a mistrial and admonished the jury "to disregard the question asked about whether there had been a citation issued because there is no proof in this case that there was any citation issued."

It may be conceded that the question was improper. However, it was not answered, and we are not of the opinion that the mere asking of it was so prejudicial that it could not be or was not cured by the admonition.

Sullivan was treated immediately after the accident by Dr. Steele Robbins, a general practitioner of medicine at Mayfield, and was hospitalized for nine days following which he was discharged to go home and bed rest. One month later, when he returned to Dr. Robbins for a rechecking, it was discovered that the muscles of his shoulder had begun to atrophy. Suspecting a nerve injury, Dr. Robbins referred the patient to Dr. French, an orthopedic specialist in Paducah. Sullivan made 22 trips to Dr. French's office for therapy treatments and, until the time of the trial, was taking prescribed exercises with the aid of his son. Five and one half months after the accident he was sent by Dr. French to Dr. William F. Meacham, an outstanding neurosurgeon at Vanderbilt University in Nashville, Tennessee, who observed "a paralysis of the deltoid and the scapular muscle groups on the right side * * * The examination revealed the rather typical sensory loss and the atrophy of the muscles supplied by the axillary circumflex nerve and its branches. This prevents the arm from being swung away from the trunk, and produces a shrinkage of the muscles around the shoulder joint and the shoulder blade, and prevents the arm from being raised or projected into positions where the hand can be utilized to the best advantage."

Fifteen months after the accident (three weeks before the trial) Dr. Meacham again examined Sullivan and found his condition to be essentially the same except for "some evidence of regeneration of the function of the nerve in the deltoid and scapular muscle group." He explained as follows:

"He is able to show some evidence of beginning muscle contraction. There is still the area of sensory loss over the apex of the shoulder. There is less atrophy than was present previously. And I think that these are encouraging findings in that these

undoubtedly can only be explained by the fact that nerve function is gradually regenerating or recurring. It has not done so completely yet."

Q "Doctor, at this time, would you be able to say with any degree of medical certainty as to when he would, if ever, get complete regeneration of that nervous system?"

A "Well, such nerve regenerations take place slowly and gradually—ordinarily into the period in some people approximating eighteen months, some others, much longer—some two to three years."

Q "Based upon the fact that the progress has been what it has been at this time, would you be able to estimate with any degree of medical certainty when, and if, he might be considered to reach his maximum regeneration?"

A "No. Not with accuracy. We can only say it is now taking place, and I don't know how rapidly it will occur."

Q "Doctor, taking into consideration his age, being fifty-two, isn't it true that regeneration and readaptability is less than it would be in a younger person?"

A "Not as far as the nerve regeneration is concerned. It might be according to his motivation. But the nerve doesn't know how old he is, and if it starts back, it will do it about as well as it will in a young person. If it don't start back at all, young and old both remain permanent."

Q "Well, taking into consideration the possibility of his completely recovering, what do you think his chances are for that at this time?"

A "I couldn't say—for this reason, Mr. Mangrum: When nerves start recovering, they have the potential to go on and completely recover. Some don't, though. Some will recover fifty per cent and stop—I am talking about peripheral nerve injuries like Mr. Sullivan had—and some will go all the way, a hundred per cent.

"Now, it is to Mr. Sullivan's advantage to continue the physical therapy exercises that his physicians have advised him to do because if recovery takes place and the muscles are not kept supple and in tone—and even though the nerve recovers, he has still got the disability of the shoulder. But now I find that he has been doing that. And I would feel that now his chances of a substantial recovery are good—although I can't say when it will be completed or how far it will go."

Q "And at this time, you wouldn't want to say that the prospect of his complete recovery would be promising, is that correct?"

A "No. I would want to say it, but I can't and be accurate about it."

At the trial, which took place nearly 16 months after the date of the injury, Sullivan testified that he was unable to raise his arm very far out and up from his body and that he was still suffering pain in his right hip, which aches when the weather is about to change. Dr. Robbins had re-examined him one week before the trial and, with respect to the right hip and leg, testified as follows:

Q "Did you measure his right leg?"

A "I did."

Q "Is there still any presence of atrophy?"

A "He had about three quarters inch smaller right thigh than he does left thigh and about half inch smaller calf of his leg. There's no difference in the length of his leg."

Q "Does this still indicate that he has weakened muscles in that leg?"

A "Yes."

Q "Shriveling away."

A "Yes."

Q "Based on the fact that it has now been some sixteen months subsequent to the time he sustained this injury, and the

presence of atrophy, what would you say his possibilities or probabilities with medical certainty would be for complete recovery on that right hip and right leg, considering his age?"

A "Now, Judge, I'm not qualified up here as an expert witness on this thing. I don't think I should give an opinion on that thing. I'm not up here as an expert on prognosis on this case. I thought I was up here as an ordinary witness to state facts of what I saw and what I did for him."

BY THE COURT: "You are here as a witness to tell what you know, if you know, or are able to express an opinion."

BY MR. WHITLOW: "I don't believe the question is in proper form. I don't have any objection, but I don't think it can be answered by the doctor in the form it was asked, just generally what the possibilities or probabilities are."

BY THE COURT: "Are you objecting to the question?"

BY MR. WHITLOW: "I object to the question for that reason."

BY THE COURT: "I see. Read the question."

BY THE COURT REPORTER: "Based on the fact that it has now been some sixteen months subsequent to the time he sustained this injury and the presence of atrophy, what would you say his possibilities or probabilities with medical certainty would be for complete recovery on that right hip and right leg, considering his age?"

BY THE COURT: "I think I'll overrule the objection and let the doctor answer if he knows the answer to it."

BY MR. WHITLOW: "In view of his statement that he doesn't prefer to give an opinion, I don't think he should be required to."

BY THE COURT: "This is a question that comes before the Court many times.

The doctor, I believe, doesn't want to answer because he was subpoenaed as a witness and he feels that this is a matter for an expert. Of course, the doctor is an expert; he may not have specialized in these things; but, if he's able to answer, let the doctor answer."

A "I don't expect after this length of time that he can recover fully from this injury that he sustained to his right hip— right hip and right shoulder."

■ On the theory that permanent injuries must be established on the basis of reasonable certainty, it is contended for Rogers that the question relating to "possibilities or probabilities" was not competent. Cf. Ingram v. Galliher, Ky., 309 S.W.2d 763, 766, 767 (1958), in which it was remarked, "It is an established rule that to warrant a recovery for permanent injuries, the future effect of the injuries sustained must be shown with reasonable certainty. The evidence must be positive and satisfactory, although it need not conclusively show the condition to be permanent. So, a mere conjecture or even probability of lasting disability does not warrant recovery for permanent impairment of earning power." Earlier decisions in which comparable terminology was employed are cited in that opinion. See also Townsend v. Stamper, Ky., 398 S.W.2d 45, 50 (1966). Such comments were directed, however, to the quality or degree of proof requisite to support a finding of permanent injury, and not to the form of question for eliciting a prognosis from an expert witness.

It is our view that in order for the jury to receive maximum enlightenment the medical witness must have considerable freedom in expressing a prognosis. Quite aside from the permanency of an injury, if at the time of trial the claimant has not fully recovered it becomes necessary for the jury to evaluate its future duration and effect. It seems to us that it would be proper simply to ask the witness for his opinion as to the prospects of recovery, and let him explain as he wishes. Cf. VII Wig-

more on Evidence § 1976 (3d ed. 1940). The thing that counts is what he says; the question need only open the subject. Within this context the question now under review, though perhaps somewhat awkward, was not improper.

■ Dr. Robbins had been engaged in the general practice of medicine for 25 years. Though he disclaimed being an expert, and was not an expert in the sense of being a specialist, we agree with the trial court that he was qualified to express an opinion with respect to the prospect of Sullivan's eventual recovery. His modesty does not impugn the competency or probative weight of his opinion.

■ We have adverted to the words "positive and satisfactory" and "reasonable certainty" as describing the quality of proof necessary to authorize recovery for permanent injury. The use of this particular terminology is not peculiar to personal injury cases, but is generally applicable to proof of compensatory damages. 22 Am. Jur.2d Damages § 22 (1965). And see, as an example, Western Union Telegraph Co. v. Ramsey, 261 Ky. 657, 88 S.W.2d 675, 677, 103 A.L.R. 541, 544 (1935). But these are relative terms only. "An analysis of the facts and holdings of the cases supports the conclusion that courts have used the term 'reasonable certainty' to mean only that the fact of damages must be taken out of the area of speculation." 22 Am.Jur.2d Damages § 22 (1965). In some cases we have used the words "reasonable probability" as a preferable expression. Gregorich v. Jones, Ky., 386 S.W.2d 955, 957 (1965); Herald v. Gross, Ky., 343 S.W.2d 831, 834 (1961). It is our view that a qualified opinion based on reasonable probability satisfies the requirement usually expressed as "reasonable certainty" and that Dr. Robbins's opinion, especially in view of Sullivan's condition 16 months after the accident, was sufficient to justify an instruction on permanent injury. To the extent our cases have suggested that testimony of a professional witness that there is a *proba-*

*bility* of permanency of injuries "is not the positive and satisfactory type of evidence required to take the case to the jury on that question," cf. H. & S. Theatres Co. v. Hampton, 300 Ky. 677, 190 S.W.2d 39, 40 (1945), they are modified accordingly.

■ The court gave two instructions in the alternative on damages, one based on a finding of permanent impairment and the other on a finding that the injuries were not permanent. In addition to his contention that there was insufficient support for an instruction on permanent injury, appellant claims that the giving of two instructions unduly emphasized the issue of damages. However, this method of submission was expressly authorized in Louisville & N. R. Co. v. Lynch, 137 Ky. 696, 126 S.W. 362, 365 (1910). See Stanley's Instructions to Juries, § 317. While it is our opinion that a single instruction along the lines of the example given in § 313 of Stanley's Instructions to Juries would have been preferable, we cannot say the giving of two instructions was prejudicial.

■ Sullivan was 52 years of age. His occupation was that of a common laborer. He worked in tobacco barns in the winter and worked as a carpenter's helper and painter in other seasons, earning $1.25 per hour. Though his medical expenses were less than $500, it will be recalled that the treatment of his injuries consists mostly of exercises taken at home. As of the time of the trial his earning power was destroyed. Dr. Meacham felt that his chances for a substantial recovery are good, but the evidence was amply sufficient to support a conclusion that he will never completely regain his ability to earn a living. As a matter of fact, upon the evidence as a whole it seems doubtful that he will ever be able to do any manual labor whatever. His pain and suffering, past and probable, are by no means minimal. The award of $30,000 does not strike us at first blush as being excessive.

The judgment is affirmed.