## Walton v. Grant.

April 30, 1946.

John B. Rodes for appellant.

Rodes K. Myers for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK— Reversing.

This action was instituted by the appellee to recover damages from the appellant for personal injuries and damages to his car growing out of a collision of their automobiles. The collision occurred at the intersection of State and 12th Streets in Bowling Green, in September, 1944. Grant was awarded $1000 for personal injuries and $719 for repairs to his car and doctors' bills.

Mr. Walton was driving his car south on State Street and Mr. Grant was approaching from the opposite direction. According to Mr. Grant's version of the collision, he had driven his car practically across the intersection when Mr. Walton swerved his car into the left front fender of his automobile. Mr. Walton's version is that, as he approached the intersection, he signaled for a left-hand turn as was his custom. He saw no approaching car within 50 feet of the intersection, and he reached the intersection before Mr. Grant. Immediately after the collision Mr. Walton told Mr. Grant that he would pay for the repairs on his automobile and he said on the witness stand he was willing to meet that expense— $369. He takes the position now, however, that the collision was caused by the fault of Mr. Grant and not his own. This action was instituted when the parties could not agree on a settlement relative to Mr. Grant's personal injuries and his medical expenses. He claims that he has a permanent injury to his elbow and that the injury has caused him great pain and suffering. Mr. Walton said he was never apprised of an injury to Mr. Grant's arm, but the question was clearly one for the jury. A doctor testified that there was a possibility of the injury being permanent.

The grounds urged for reversal relate to the instructions. The principal objection to them is that Instruction No. 1 placed an absolute duty on Mr. Walton to make the left-hand turn into 12th Street in safety, and that the instruction did not properly present Mr. Walton's theory of the case, namely, that he reached the intersection first.

Instruction No. 1 follows:

"The Court instructs the jury that it was the duty of the defendant, Walton, and of the plaintiff, Grant, in proceeding southwardly and northwardly, respectively, on State Street, as they approached the intersection with 12th Street, to operate their automobiles at a reasonable rate of speed; to keep a lookout ahead for other cars using said street and said intersection; to have their cars under reasonable control, and, when necessary, to give warning of their approach; and to use ordinary care to avoid colliding with other vehicles using said street or leaving or entering said intersection.

"It was the duty of the defendant, Walton, before making a left-hand turn into 12th Street, to see that there was sufficient space for such turn to be made in safety, and if it appeared that the movement or operation of any other vehicle might reasonably be affected by such turn, it was his duty to give reasonable, timely and visible signals of his intention to turn or change the course of his vehicle by extending his hand and arm horizontally from and beyond the side of the vehicle towards which the turn was to be made, and to use ordinary care not to pull his car into the path or line of traffic of oncoming cars.

"It was the duty of the plaintiff, Grant, if the defendant, Walton, had first reached said intersection and was proceeding to turn into 12th Street, to have his car under reasonable control and to use ordinary care to avoid colliding therewith."

We believe there is merit to these complaints, and, since we have been unable to find a satisfactory set of instructions which covers an intersection case such as the one before us, we take the liberty to set forth what appears to us to be a set of instructions which covers the duties of the drivers of the two automobiles. These instructions have not been designed with the view of attaining a model of perfection, but we believe their general framework is adequate to cover this case. They follow:

"Instruction No. 1. It was the duty of the defendant, Walton, in driving his automobile southwardly on State Street as he approached the intersection of 12th Street (1) to operate his automobile in a careful manner

with due regard for the safety and convenience of other vehicles, including the automobile of the plaintiff, Grant, upon said streets and intersection; (2) to exercise ordinary care to avoid colliding with Grant's automobile; (3) to keep a lookout for other cars using the streets and the intersection; (4) to have his automobile under reasonable control and to operate it at a rate of speed which was reasonable and proper, having due regard for the traffic and use of the streets and intersection by other vehicles; (5) to see that there was sufficient space and time to make a left turn into 12th Street in safety; (6) to give a plainly visible signal of his intention to turn for not less than the last 100 feet traveled by extending his hand and arm in a horizontal position from and beyond the side of his car in the direction toward which his turn was to be made if it appeared that the movement or operation of Grant's automobile might reasonably be affected by the turn; (7) to pass to the left of the center point of the intersection in making the turn (that is, the meeting of the medial lines of the two streets) keeping as far to the right as was possible, however, and still pass to the left of the center point; and (8) since Grant, who was approaching on the right of Walton, as he turned into the intersection had the right of way through the intersection, it was the further duty of Walton to yield that right of way to Grant unless the jury believes from the evidence that Walton first reached and entered the intersection beyond the center point, in which event he and not Grant had the right of way through the intersection, and it was the duty of Grant to yield to him.

"If the jury believes from the evidence that Walton failed to observe any one or more of the duties herein set forth and that as a direct and proximate result of such violation the collision of the automobiles occurred and Grant was injured in his person and his automobile was damaged, the law is for Grant and you should find for him as described in Instruction No. 3; and, unless you so believe, or if you believe from the evidence that Grant was himself guilty of contributory negligence as defined in Instruction No. 2, in either event you should find for Walton."

"Instruction No. 2. It was the duty of the plaintiff, Grant, in driving northwardly on State Street as he approached the intersection of 12th Street (1) to operate

his automobile in a careful manner, with due regard for the safety and convenience of other vehicles, including the automobile of the defendant, Walton, and to exercise ordinary care to avoid colliding with Walton's automobile; (2) to have his automobile under reasonable control and to operate it at a rate of speed which was reasonable and proper, having due regard for the traffic and use of the street by other vehicles; (3) to keep a lookout ahead for other automobiles and for signals which another operator might give of his intention to change his course of travel which might thereby affect his, Grant's, operation; and (4) it was the further duty of Grant to yield the right of way to Walton so as to permit him to pass into 12th Street in safety if the jury believes from the evidence that Walton reached and entered the intersection beyond the center point first, since he thereby had the right of way over Grant.

"If the jury believes that Grant failed to observe any one or more of the duties here set forth, and that such failure was the proximate cause of the collision, or his actions so contributed or helped to cause the collision of the automobiles and but for such failure, if any, on his part the collision would not have occurred and Grant would not have been injured personally or his automobile damaged, then the jury should find for Walton even though you should believe from the evidence that Walton was also negligent in failing to observe any one of the duties placed upon him under Instruction No. 1.''

Objections are raised also to a part of Instruction No. 3. The third paragraph of this Instruction follows:

"If you believe from the evidence that plaintiff has been permanently injured, and his power to earn money has been permanently impaired, you may award him such sum in damages as will reasonably compensate him for such permanent injury, if any, as may be the direct and proximate result of defendant's negligence, if any, not to exceed the sum of $5,000.00, the amount sued for; and you may further award the plaintiff such sum in damages as you may believe from the evidence he has necessarily incurred for doctors' bills and medical expenses, and as you may believe from the evidence it may be necessary for him to incur, as the direct and proximate result of defendant's negligence, if any, not to exceed the sum of $350.00, the amount sued for. Plain-

tiff's total recovery cannot exceed the sum of $10,719.00, as herein set out."

The objection to the first part of the quotation from the third instruction is that it authorized the jury to award damages for a permanent injury, rather than for the impairment of Mr. Grant's power to earn money, in the event he was found to have a permanent injury. The point is well taken. Porter v. Music, 252 Ky. 582, 67 S. W. 2d 958; Gretton v. Duncan, 238 Ky. 554, 38 S. W. 2d 448; Consolidated Coach Corporation v. Wright, 231 Ky. 713, 22 S. W. 2d 108.

The second objection raised to the third instruction is that there should have been no allowance for doctors' bills in excess of $75. That point likewise is well grounded. The doctor who testified for Mr. Grant said that his bill was $75. When asked whether he had any way of anticipating what it would be in the future he said he did not know, and that he did not know how long Mr. Grant would require treatment. It can be seen, therefore, that there was no evidence warranting a finding for future medical bills.

For the reasons given, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.