## Bridge Transit Co. v. Leseuer.

March 28, 1947.

B. H. Farnsley, Judge.

404

Woodward, Dawson, Hobson & Fulton for appellant.

Brent Overstreet for appellee.

Opinion of the Court by Chief Justice Rees—Reversing.

The Bridge Transit Company operates a bus line from Jeffersonville, Indiana, across a bridge over the Ohio River to Louisville, Kentucky, south on Second street in Louisville to Guthrie street, west to Third street and thence north on Third street. On August 31, 1945, Carl G. Leseuer, an employee of the Jeffersonville Boat & Machine Company, was a passenger on a bus of the Bridge Transit Company when it collided with an automobile owned and driven by Vernon G. Winston, Sr. The collision occurred at the intersection of Second and Liberty streets in Louisville. Leseuer was injured, and on September 29, 1945, he brought this action for damages against the Bridge Transit Company and Vernon G. Winston, Sr., alleging that his injuries were caused by the joint and concurrent negligence of the defendants. On the trial of the case the jury returned a verdict in favor of Leseuer against the Bridge Transit Company for $2,460.61, and in favor of the defendant Vernon G. Winston, Sr. Ten members of the jury signed the verdict. The Bridge Transit Company has appealed and seeks a reversal of the judgment on two grounds: (1) The verdict is flagrantly against the weight of the evidence; and (2) the instructions are erroneous.

The bus in which appellee Leseuer was riding was crowded when it left Jeffersonville, and a large number

of passengers, including appellee, were forced to stand. The bus made three stops and discharged passengers before reaching the intersection of Second and Liberty streets. It stopped at the northwest corner of this intersection and discharged several passengers, but was still crowded and between five and ten passengers, including appellee, were standing when the bus started south across Liberty street. Winston was traveling north on Second street, intending to make a left turn into Liberty street and to continue west on that street. The bus and Winston's automobile collided at a point near the center of the intersection, but neither vehicle suffered any material damage. Winston's automobile suffered a slight dent in the front part of the right rear fender, but neither vehicle was taken to a garage for repairs. Appellee was holding an overhead rail with his left hand, and the sudden stopping of the bus caused his left arm to be twisted. His wrist was fractured, and permanent injury resulted. On the trial the plaintiff Leseuer testified that he did not see Winston's automobile and knew nothing concerning the cause of the accident. He only knew that the bus stopped suddenly and he was injured. Dr. James Willis Marcum treated Leseuer at the City Hospital, and he testified concerning the nature of the injury. The plaintiff introduced only two other witnesses, Ernest S. Roberts, driver of the bus, and the defendant Vernon G. Winston, Sr., driver of the automobile. Roberts testified that the bus belonged to the Bridge Transit Company; that he was the driver; and that the bus and Winston's automobile collided at the intersection of Second and Liberty streets. Winston testified that he was the owner and driver of the automobile involved in the collision. Neither of these witnesses was questioned by the plaintiff as to how the accident happened.

The defendant Bridge Transit Company introduced three eyewitnesses of the collision. Ernest S. Roberts, driver of the bus, Owen Shacklett, a passenger on the bus, and Franklin H. McCormack, a pedestrian, who was standing on the southwest corner of Second and Liberty streets waiting for the red light to turn so that he might cross Liberty street in safety. Roberts testified that he pulled to the northwest corner of Second and Liberty streets, discharged several passengers,

closed the bus door, and waited for the light to turn green. When it turned green he started across the intersection in low gear, and when the front end of the bus reached approximately the middle of the intersection the defendant Winston made a left turn in front of him without any signal. He said that Winston turned left with a quick swerve, and he immediately applied the brakes on the bus. Roberts was not employed by the Bridge Transit Company when he testified. Owen Shacklett was sitting on the front seat of the bus near the driver looking forward. He testified as follows:

"I was sitting on the front seat of the bus, and the bus stopped at Second and Liberty to discharge passengers, and when the light turned green, after the passengers were off, the bus started south on Second. There was a car, a coupe, on the east side of Second Street, coming north, and as the bus started this coupe suddenly made a turn to go down Liberty, right in front of the bus—didn't give any warning signal or anything like that—and he was near the middle of the street. Well, the car seemed like it started and kind of halted and then started off again, and he ran right into the bus, and the bus driver jammed on his brakes, and when he jammed on the brakes he stopped right in the intersection where the two cars collided."

Franklin H. McCormack testified that he was standing on the southwest corner of Second and Liberty streets facing north waiting for the light to turn green before walking north on Second across Liberty. The bus started across Liberty street as the light changed, and as the bus reached the middle of the intersection the Winston car, which was traveling north on Second, made a left turn into Liberty going west, and "sideswiped the bus." He testified that the driver of the automobile failed to give any signal prior to the time he made the left turn.

Everett R. Archer, a policeman, was called to the scene of the accident, and when he arrived saw the two vehicles in the center of the intersection. He talked with the two drivers, some of the bus passengers, and Mr. McCormack, and then gave Winston, the driver of the automobile, a citation "for failing to yield the right of way on the left turn."

The only witness introduced in behalf of the defend-ant Winston was Winston himself. He testified that he was proceeding north on Second street and stopped for a red light at Liberty street. When the light changed to green he gave the usual left turn signal, and turned left into Liberty street. At this time he observed the bus standing at the curb at the northwest corner of the intersection still discharging passengers. As he neared the walkway across Liberty street two girls stepped from the sidewalk and started walking south. He blew the horn, but the girls failed to look up and he stopped for them to pass. While his automobile was standing near the center of the street, the bus moved forward and struck the right rear fender. The bus was still standing at the curb when he stopped his automobile for the two girls to pass. Just before the collision he heard someone exclaim, "Look out, you are going to hit that car." He glanced up and saw the driver of the bus who appeared to be looking to his left rather than in Winston's direction. No other witness heard such an exclamation or saw the two girls. Mr. McCormack, who was crossing from the southwest to the northwest corner of the intersection, testified that no girls crossed from the northwest corner at the time of the collision. Winston also testified to a conversation with the bus driver in which the latter said: "I just had so many people on here I really didn't see you." Roberts, the bus driver, was introduced in rebuttal, and he denied making such a statement.

It is earnestly argued that the verdict is so flagrantly against the evidence that the judgment ought to be reversed and a new trial granted. The argument apparently is based on the theory that there is no substantial evidence tending to show negligence on the part of the bus driver, and that Winston's testimony constitutes no more than a scintilla of evidence insufficient alone to sustain the verdict. In Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. 2d 877, 883, we abolished the scintilla rule, and since then have consistently held that evidence insufficient to sustain a verdict is insufficient to take the case to the jury and a peremptory instruction should be given. The present rule of practice is stated in the Nugent case as:

"When the evidence given at the trial, with all in-

.ferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but should direct a verdict for the defendant.''

It cannot be successfully claimed, and it is not argued, that the evidence was insufficient to take the case to the jury. If Winston's version of the accident is true, the bus driver alone was guilty of negligence. The physical facts are not such as to render his testimony incredible. It may seem strange that the jury chose to believe the testimony of a vitally interested witness rather than the testimony of wholly disinterested witnesses, but ten members of the jury did so choose. According to the disinterested witnesses, Winston's negligence alone was responsible for the collision, while, according to Winston, the bus driver alone was guilty of negligence. The showing of Winston's interest in the outcome of the case went only to his credibility as a witness. In view of the state of the evidence, the case really turned on the credibility of the witnesses, and therefore was peculiarly one for the jury. The choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth, the inference to be drawn from the facts, controverted and uncontroverted, were questions for the jury. Cheatham v. Chabal, 301 Ky. 616, 192 S. W. 2d 812; Huber & Huber Motor Express v. Martin's Adm'r, 265 Ky. 228, 96 S. W. 2d 595. The defendant Winston was not supported in any respect by a single witness, but, according to his own testimony, he was the perfect driver, observing every precaution from the time he entered Liberty street until he had made the left turn and stopped to avoid striking two girls, to his codefendant imaginary girls. He was eloquent in his own defense and convincing to the jury. We do not say he protested too much, but, as said by Edward Gibbon of an eloquent Roman consul, he is one ''whose merit is loudly celebrated by the doubtful evidence of his own applause.''

The instruction of which complaint is made is instruction 2, defining the duty of the defendant Winston, and particularly paragraph (c) of the instruction, which reads:

''(c) before turning to the left at the intersection of Second and Liberty Streets, to see first that there was sufficient space for such turn to be made in safety, and if it appeared that the movement or operation of another vehicle might reasonably be affected by such turn, then it was his further duty to give to the operator of such other vehicle plainly visible signal of his intention to so turn by extending his left hand and arm horizontally out from and beyond the left side of his machine.''

The instruction omits the paramount duty of a driver making a left turn at an intersection, and that is to yield the right of way to the driver of a vehicle whose path he is about to cross unless he, the driver of the car making the turn, first reached and entered the intersection beyond the center point. An instruction almost identical with the instruction in the present case was condemned in Walton v. Grant, 302 Ky. 194, 194 S. W. 2d 366, and an instruction covering the duties of the driver of a car making a left turn at an intersection was prepared and directed to be given on another trial. We think the instructions prepared in the Walton case, when read together, properly define the duties of the drivers of the respective vehicles, but it will clarify them if the words ''beyond the center point'' are inserted after the words ''reached and entered the intersection'' near the end of clause (4) of instruction 2, defining the duties of the driver of the car proceeding directly across the intersection, in this case the bus driver. The instruction given in the present case might not be prejudicial under certain states of fact, but this is not such a case. In view of the fact that the verdict was not unanimous and was against the preponderance of the evidence, we are unable to say the instruction was not prejudicially erroneous.

The judgment is reversed with directions to grant appellant a new trial.