RENDERED: NOVEMBER 22, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1125-MR

NINA COLVIN, AS PARENT AND
STATUTORY GUARDIAN ON
BEHALF OF W.M.C., A MINOR                                        APPELLANT


|   | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE MELISSA L. BELLOWS, JUDGE |
|   | ACTION NO. 21-CI-006638 |


OUTER LOOP CHILD CARE, INC.
AND RAMIAH BERRI DOUGLAS, IN
HER INDIVIDUAL CAPACITY                                          APPELLEES

AND


NO. 2023-CA-1158-MR

RAMIAH BERRI DOUGLAS,
INDIVIDUALLY                                                    CROSS-APPELLANT


|   | CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE MELISSA L. BELLOWS, JUDGE |
|   | ACTION NO. 21-CI-006638 |

NINA COLVIN, AS PARENT AND
STATUTORY GUARDIAN ON
BEHALF OF W.M.C., MINOR                        CROSS-APPELLEE

AND

NO. 2023-CA-1181-MR

OUTER LOOP CHILD CARE, INC.                    CROSS-APPELLANT

                    CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE MELISSA L. BELLOWS, JUDGE
                    ACTION NO. 21-CI-006638

NINA COLVIN, AS PARENT AND
STATUTORY GUARDIAN ON
BEHALF OF W.M.C., A MINOR                       CROSS-APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, GOODWINE, AND TAYLOR, JUDGES.

GOODWINE, JUDGE:  Nina Colvin ("Colvin"), as parent and statutory guardian

on behalf of W.M.C., a minor, appeals the June 9, 2023 final judgment of the

Jefferson Circuit Court.  Ramiah Berri Douglas ("Douglas"), in her individual

capacity, and Outer Loop Child Care, Inc. ("Outer Loop") cross-appeal the same judgment. After careful review, we affirm.

## BACKGROUND

On April 1, 2021, W.M.C. ("the child"), then four years' old, was in the care of Outer Loop. Douglas, an employee of Outer Loop, was the child's teacher. During naptime, Douglas wrapped painters' tape around the child's wrists. She left the tape on the child's wrists for approximately forty minutes and removed it at the end of naptime.

On November 22, 2021, Colvin filed a complaint alleging several claims against Outer Loop and Douglas. The trial court granted summary judgment in favor of the defense on some of Colvin's claims. Ultimately, Colvin requested more than $50 million in damages with $11 million in future medical expenses.

Dr. Felicia Meyers ("Meyers"), a clinical psychologist, evaluated the child and was deposed by Outer Loop and Douglas prior to trial. She diagnosed the child with post-traumatic stress disorder ("PTSD") because of the incident at the daycare. Neither Outer Loop nor Douglas contests this diagnosis. However, based on what they characterized as speculative testimony by Meyers during her deposition, both defendants filed motions *in limine* requesting her testimony be excluded at trial. The trial court denied these motions without explanation.

On May 23, 2023, Meyers testified at trial. She testified to the child's PTSD diagnosis, which she described as a "permanent impairment that waxes and wanes with life's stressors." Video Record ("V.R.") 5/23/2023 at 4:12:29-47. She explained the child's symptoms could "remit" and "reemerge" throughout her life. *Id*. at 4:08:04-25. She agreed that events such as not getting a date to prom, getting pulled over while driving, or sending her own daughter to daycare are "all possibilities" which might cause the child's symptoms to recur throughout her life. *Id*. at 4:15:08. She concluded the child may need therapy "intermittently throughout the rest of her life." *Id*. at 4:13:04-06. Specifically, she testified the child "needs psychotherapy to address her [PTSD]" and "should also receive a psychopharmacological evaluation." *Id*. at 4:23:47-24:04. She agreed that $250 per session was an "approximate fair market value" for therapy. *Id*. at 4:31:36-46.[1]

On cross-examination, Meyers agreed she "couldn't predict any single" event which will trigger the child's symptoms during her life. *Id*. at 4:51:48-51. She testified that any of the possible negative outcomes which have been associated with PTSD "could or could not" happen during the child's life. *Id*. at 4:52:31-32. She agreed the child would not need continuous lifelong treatment. She testified that she "would be unable to give a specific, exact number" of times

---

[1] During her testimony, Colvin said she had paid $250 per hour for the child's therapy. V.R. 5/23/2023 at 2:29:17-18.

the child would need to see a therapist in the future. *Id.* at 5:27:33-42. She could only say that "research suggests [PTSD] is linked to . . . negative outcomes." *Id.* at 5:28:02-33.

On May 24, 2023, at the close of Colvin's case-in-chief, the parties made various motions for directed verdict. Both defendants moved for a directed verdict on Colvin's claim for future medical expenses. The trial court did not immediately rule on the motions, no party asked the court to do so, and the defense proceeded with its case-in-chief. The parties then argued their motions midway through the defense's case on May 25, 2023. Again, the court did not immediately rule on the motions and none of the parties pushed for rulings.

With its motion for direct verdict on future medical expenses pending, Outer Loop called Dr. Timothy Houchin ("Houchin"), a child psychiatrist, to testify. He agreed with the child's PTSD diagnosis and testified she needed trauma-focused cognitive behavioral therapy ("TF-CBT") to treat the condition. He specifically testified the child would need the following treatment: (1) eight to twenty-five sessions of TF-CBT at an estimated cost of $300 per session; (2) an evaluation by a child psychiatrist for an estimated cost of $3,000; and (3) testing by a psychologist for an estimated cost of $2,000-$3,000. *Id.* 5/25/2023 at 2:36:20-2:38:54. In Houchin's medical opinion, with such treatment, the child's PTSD would not be a "lifelong impairment." *Id.* at 2:55:33-34.

The following day, the trial court granted the defendants' motions for directed verdict on Colvin's claim for future medical expenses because of the speculative nature of Meyers' testimony.

At the close of evidence, the jury was instructed on Colvin's remaining claims of negligent training against Outer Loop and negligence and false imprisonment against Douglas. After deliberations, the jury returned a verdict in Colvin's favor on all claims. The jury awarded $55,000 in damages for past and future physical and mental pain and suffering, and apportioned fault sixty percent to Douglas and forty percent to Outer Loop. The trial court entered the final judgment on June 9, 2023.

Colvin moved for a new trial on several grounds, including that the trial court erred by granting the directed verdict on her claim for future medical expenses. The trial court denied the motion because Meyers' testimony "constituted speculative assertions" because she did not testify to "specific proof of needs for future medical expenses." Record ("R.") at 1160. The court found Meyers' testimony insufficient because she was "unable to give a particular number of therapy sessions . . . and even if [the child] would need those treatments." *Id*.

This appeal and cross-appeals followed.

# STANDARD OF REVIEW

We review alleged evidentiary errors, including decisions on motions *in limine* to exclude witness testimony, for abuse of discretion. *Boland-Maloney Lumber Co., Inc. v. Burnett*, 302 S.W.3d 680, 688 (Ky. App. 2009) (citing *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000)). A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Jackson v. Ghayoumi*, 419 S.W.3d 40, 43 (Ky. App. 2012) (citation omitted).

> Our directed-verdict standard of review is well settled. First of all, when presented with a motion for directed verdict, a trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion. As a reviewing court, we must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party.
>
> It is the province of the jury, of course, to weigh the evidence, but a directed verdict is appropriate where there is no evidence of probative value to support an opposite result because [t]he jury may not be permitted to reach a verdict upon speculation or conjecture. The judgment of the trial court in such matters will only be substituted when clearly erroneous. In the end, a trial court should only grant a directed verdict when there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 285 (Ky. 2014) (internal quotation marks and footnotes omitted).

# ANALYSIS

On appeal, Colvin argues the trial court clearly erred when it entered a directed verdict barring her request for future medical expenses. On cross-appeal, both Douglas and Outer Loop argue the trial court should have granted their motions *in limine* for Meyers' testimony to be excluded at trial.[2]

We will first consider the argument raised by the cross-appellants. Both Outer Loop and Douglas moved for Meyers' testimony as to future medical expenses to be excluded based on her deposition testimony. Both defendants argued her deposition testimony was too speculative regarding future medical expenses to be admissible. We agree.

"It is an established rule that to warrant a recovery for permanent injuries, the future effect of the injuries sustained must be shown with reasonable certainty. The evidence must be positive and satisfactory, although it need not conclusively show the condition to be permanent." *Rogers v. Sullivan*, 410 S.W.2d 624, 627 (Ky. 1966) (internal quotation marks and citation omitted).

> [W]hile the particular phrase used should not be dispositive, it may indicate the level of confidence the expert has in the expressed opinion. Perhaps nothing is absolutely certain in the field of medicine, but the intent of the law is that if a physician cannot form an opinion with sufficient certainty so as to make a medical

---

[2] Outer Loop and Douglas characterize their cross-appeals as protective in nature. Both ask that the judgment be affirmed and offer this argument as an alternative grounds for affirmance.

judgment, neither can a jury use that information to reach a decision.

*Combs v. Stortz*, 276 S.W.3d 282, 296 (Ky. App. 2009) (citations omitted).

In *Burnett*, 302 S.W.3d at 691, this Court reversed the trial court's decision on a motion *in limine* and remanded for a new trial on future medical expenses. Therein, the trial court excluded evidence of Burnett's claim of future medical expenses because it was not supported by expert testimony. *Id*. Burnett's physician diagnosed him with "a seizure disorder which would likely require him to take anti-seizure medication for the remainder of his life." *Id*. at 692. The physician did not testify to the amount or cost of medication, but Burnett provided evidence of the yearly cost of the medications he was prescribed at the time of trial. *Id*. This Court found this evidence sufficiently probative to entitle Burnett to a new trial on the issue. *Id*.

This matter is easily distinguishable from *Burnett*. During her deposition, Meyers testified to diagnosing the child with PTSD and recommending psychotherapy as treatment. She described PTSD as a lifelong condition which "waxes and wanes." R. at 355.[3] She broadly testified to the **possibility** that the child will experience "negative outcomes" because of PTSD but agreed that she

---

[3] Meyers' deposition in its entirety was not before the trial court at the time it decided the motions *in limine*. Like the trial court, we rely on the excerpts cited by the parties in their motions and responses.

could not "speak to what will happen in [the child's] life to any certainty." *Id*.

Meyers repeatedly testified to what **could** happen in the child's future. *Id*. at 341.

When questioned about the number of times the child would need to seek treatment in the future, Meyers testified that she "couldn't give an exact number." *Id*. at 342.

When asked about the cost of future treatment, Meyers testified she "could not begin to find a dollar amount." *Id*. at 343.

In response, Colvin did not contest the accuracy of the defendants' recitations of Meyers' testimony. She quoted only the following exchange from the deposition:

> Q. Yes, ma'am. I'm sorry. I think the answer is no. We have to ask people like you. Sometimes people suggest Jimmy[4] would incur future medical expenses and then put a number on it.
>
> You have no opinions in this case stated within a reasonable degree of psychological probability that this child will, in fact, incur future medical and/or psychiatric expense associated with these events in the future?
>
> A. I would - -
>
> Q. You don't know?
>
> A. I would anticipate that she will as the - -
>
> Q. What kind?
>
> A. Therapy possibly if the psychiatrist thought that - - found that she was a good candidate for

---

[4] It is unclear from the record to whom "Jimmy" refers. This is not the child's name.

> psychopharmacological regimen, she could be prescribed some medication.

*Id*. at 372.[5]  Meyers' answers during this exchange were couched in the same speculative language as those cited by the defendants.  She described therapy as a **possibility** and testified a psychiatrist **could** prescribe medication.  Unlike the testimony of the physician in *Burnett*, Meyers' deposition testimony does not indicate a likely course or duration of treatment.  Furthermore, she was entirely unable to estimate the cost of the child's treatment, and, unlike *Burnett*, Colvin did not identify any other evidence of the cost of treatment.

Colvin cites to *Inland Steel Co. v. Johnson*, 439 S.W.2d 564 n.1 (Ky. 1969) (citation omitted) (emphasis added), which states,

> Physicians differ in the degree of caution or lack of caution with which they phrase their opinions, and one man's 'possibility' may be equivalent to another's 'probability.'  It is submitted that, **except where the use of the term 'possibility,' or other words of similar import, is indicative of an over-all speculative viewpoint**, the mere employment of such language should not be . . . a basis for disregarding the particular physician's testimony.  Substance should prevail over form, and the expert's testimony should be examined in its total meaning, rather than word-by-word.

---

[5] Colvin filed separate responses to the defendants' motions *in limine*.  With regard to their arguments on future medical expenses, her responses were identical.

In her deposition, Meyers did not merely use the term "possibility," but testified in a way that can only be characterized as overall speculative about the child's future treatment.

Furthermore, in both her briefs and responses to the defendants' motions *in limine*, Colvin repeatedly cites *Rogers*, 410 S.W.2d 624, to assert that Meyers was not required to say "reasonable probability" to prove her claim of the child's future medical expenses. While failure to use such phrasing is not determinative of a claim for future medical expenses, the plaintiff's evidence must take the claim "out of the area of speculation." *Id*. at 628 (citation omitted). Our decision does not rest on any specific phrase Meyers did or did not use but on the substance of her testimony which can only be characterized as impermissibly speculative. The trial court's failure to exclude her testimony as to future medical expenses was an abuse of discretion.

We will now address Colvin's argument on appeal. Because of the stage in the proceedings at which the trial court made its decision, the court erroneously granted a directed verdict on Colvin's claim for future medical expenses. However, because Meyers should not have been permitted to testify to future medical expenses at trial, the court's error was harmless. *See* CR[6] 61.01. "An error is not prejudicial and a judgment should not be set aside if upon

---

[6] Kentucky Rules of Civil Procedure.

-12-

consideration of the whole case it does not appear that there is a substantial possibility that the result would have been any different." *Parish v. Petter*, 608 S.W.3d 638, 644 (Ky. App. 2020) (internal quotation marks and citations omitted).

Kentucky's highest Court[7] held that a jury should not be instructed on future medical expenses where the plaintiff's physician was unable to testify to the type, cost, and duration of future treatment. *Walton v. Grant*, 194 S.W.2d 366, 368 (Ky. 1946), *overruled on other grounds by Rankin v. Green*, 346 S.W.2d 477 (Ky. 1960). The Court has also found that a physician's testimony that a "boy would need a companion 'from time to time'" was insufficient to support a jury instruction on the future expense of such a companion. *Kentucky & Indiana Terminal R.R. Co. v. Mann*, 312 S.W.2d 451, 454 (Ky. 1958).[8]

Meyers' testimony at trial is comparable to that of the physicians in *Walton* and *Mann*. Her testimony was Colvin's only evidence to support her claim for future medical expenses. Meyers described PTSD as a condition that "waxes and wanes" throughout someone's life. However, she testified she could not

---

[7] The Kentucky Court of Appeals prior to 1976.

[8] More recently, this Court held "[i]f a physician testifies that he does not know the need, length, or cost of future medical expenses then no instruction should be given." *Ellison v. Kentucky Farm Bureau Mut. Ins. Co.*, No. 2009-CA-000116-MR, 2010 WL 2696289, *5 (Ky. App. Jul. 9, 2010) (citations omitted). Therein, a physician testified to Ellison's injuries and past treatment, but when asked about whether Ellison would require future surgeries, the physician said, "there was no way to know and he had no idea what might happen in the future." *Id*. at *4 (internal quotation marks omitted). We cite Ellison as a persuasive, nonbinding authority. RAP 41(A).

predict what, if anything, might cause the child's PTSD symptoms to reemerge in the future. She could not testify to the need, length, or cost of the child's future medical treatment.[9] Had Meyers' testimony been the only evidence regarding future medical expenses on the record at the time of the court's directed verdict, the trial court's finding that she "was unable to give a particular number of therapy sessions that [the child] would need in the future, and even if she would need those treatments," would have been sufficient to support its directed verdict. R. at 1160.

However, the trial court did not grant the directed verdict at the close of Colvin's case-in-chief. In fact, the defendants did not even argue their motions until they had already begun to present their own case. Most importantly, after hearing arguments on the motion, the trial court did not immediately issue a ruling. Neither defendant pressed for a ruling before presenting their own evidence on the child's future medical expenses. *See Dillard v. Commonwealth*, 995 S.W.2d 366, 371 (Ky. 1999) (citation omitted) (holding "[i]t is the duty of one who moves the trial court for relief to insist upon a ruling"). With its motion pending, Outer Loop elected to call Houchin to testify and elicited testimony about psychological treatment the child would need in the future to treat her PTSD. Houchin gave

---

[9] While Meyers agreed $250 per session was a reasonable cost for therapy, she was unable to testify to the duration of treatment with any certainly. She also did not testify to the cost of a psychopharmacological evaluation despite recommending the child receive one.

detailed testimony about type, need, length, and cost of this recommended treatment.

The trial court erred by granting the defendants' motions for directed verdict because it ignored Houchin's testimony. "[A] plaintiff is entitled to the benefit of any facts which may have been developed by the defendant in order to sustain his cause of action." *Lyon v. Prater*, 351 S.W.2d 173, 175 (Ky. 1961) (citation omitted). The trial court failed to consider the totality of the evidence before the jury at the time it ruled on the motion. *See Belt v. Cincinnati Insurance Company*, 664 S.W.3d 524, 530 (Ky. 2022) (footnote omitted). Had the court drawn "all fair and reasonable inferences" from Meyers' and Houchin's testimony in Colvin's favor, the evidence would have clearly overcome the threshold for a directed verdict. *Id*. (footnote omitted). With Houchin's testimony, there was not "a complete absence of proof" on the issue of future medical expenses. *Id*. (footnote omitted).

However, because the trial court abused its discretion when it denied Outer Loop and Douglas' motions *in limine* and allowed Meyers to testify to future medical expenses, the court's directed verdict amounts to harmless error. At trial, testimony from Houchin, not Meyers, provided evidence sufficient to overcome the standard for granting a directed verdict. Had the trial court properly excluded Meyers' testimony prior to trial, Outer Loop would have had no reason to elicit the

-15-

relevant testimony from Houchin, and Colvin would have been unable to prove future medical expenses. Ultimately, the jury should not have been instructed on future medical expenses and it was not, meaning there was no injustice and there is no substantial possibility of a different outcome. Therefore, the trial court's error was harmless.[10]

## **CONCLUSION**

Based on the foregoing, we affirm the June 9, 2023 judgment of the Jefferson Circuit Court.

ALL CONCUR.

BRIEFS FOR NINA COLVIN, AS
PARENT AND STATUTORY
GUARDIAN OF W.M.C., A MINOR:

Jeffrey Allan Sexton
Louisville, Kentucky

Michael R. Mazzoli
Louisville, Kentucky

BRIEFS FOR OUTER LOOP CHILD
CARE, INC.:

Katherine Lacy Crosby
Marc G. Farris
Louisville, Kentucky

BRIEFS FOR RAMIAH BERRI
DOUGLAS:

Matthew P. Cook
Bowling Green, Kentucky

---

[10] We acknowledge the complicated circumstances of this matter. Much of this is because the trial court chose to delay both the parties' arguments on their motions for directed verdict and its rulings thereon. It is the responsibility of the moving party to insist upon a ruling. *Bell v. Commonwealth*, 473 S.W.2d 820, 821 (Ky. 1971). However, in the future, the trial court could avoid confusion by promptly ruling on motions at trial.